SCOTT VANHOUTON *vs.* COMMONWEALTH
(and a consolidated case).
COMMONWEALTH *vs.* SCOTT VANHOUTON.

Suffolk. January 7, 1997. - March 3, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, GREANEY, FRIED, &
MARSHALL, JJ.

*Motor Vehicle,* Operating under the influence. *Constitutional Law,* Double
jeopardy, Admissions and confessions, Self-incrimination. *Evidence,*
Field sobriety test, Admissions and confessions.

A criminal defendant's claim, that his prosecution for operating a motor
vehicle while under the influence of intoxicating liquor was prohibited
on double jeopardy grounds after the administrative seizure of his license
at the time he was arrested, was foreclosed by *Leduc* v. *Commonwealth,*
421 Mass. 433 (1995), cert. denied, 117 S. Ct. 91 (1996), and *Luk* v.
*Commonwealth,* 421 Mass. 415 (1995). [330]

A criminal defendant was not in custody when he was temporarily detained
by a police officer after being stopped on suspicion of operating a motor
vehicle while under the influence of intoxicating liquor and Miranda
warnings were not therefore required before he was requested to perform
certain field sobriety tests; further, the officer's request did not involve
compulsion sufficient to trigger the protection of the Fifth Amendment
to the Constitution of the United States. [330-333]

A Superior Court judge correctly concluded that two field sobriety tests, a
heel-to-toe walk and a one-legged stand, requested by a police officer to
be performed by a driver stopped on suspicion of operating a motor ve-
hicle while under the influence of alcohol, were not testimonial in nature,
that is, not communicative to the extent necessary to evoke the privilege
conferred by art. 12 [333], but the judge incorrectly concluded that an
alphabet recitation test was testimonial where it had no inherent com-
municative value [334-337].

INDICTMENT found and returned in the Superior Court
Department on October 26, 1994.

Pretrial motions to dismiss and to suppress evidence were
heard by *John C. Cratsley,* J., and *Thomas E. Connolly,* J.,
respectively.

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on May 11, 1995.

The case was heard by *Wilkins*, J.

Applications of the Commonwealth and the defendant for interlocutory appeal from orders on the motion to suppress were allowed by *Greaney*, J., in the Supreme Judicial Court for the county of Suffolk, and those appeals were consolidated with the defendant's appeal from the denial of the motion to dismiss and reported by him.

*James B. Krasnoo* for the defendant.

*S. Jane Haggerty*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant, Scott Vanhouton, is charged in the Superior Court with operating a motor vehicle while under the influence of intoxicating liquor, fifth offense. G. L. c. 90, § 24 (1) (*a*) (1). He filed a motion to dismiss the indictments on the ground of double jeopardy, which was denied. The defendant thereafter filed a motion to suppress the results of field sobriety tests that had been administered to him.[1] He argued, among other issues, that requiring him to take the tests violated his privileges against self-incrimination as secured by the Fifth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution.[2] An evidentiary hearing was held on the motion to suppress, after which the judge made findings of fact and rulings of law. The judge denied the motion to suppress with respect to evidence of the defendant's performance on the heel-to-toe and the one-legged standing tests, but he allowed the motion with respect to evidence of the defendant's performance on the alphabet recitation test. A single justice of this court granted the applications of the defendant and the Commonwealth to pursue interlocutory appeals from the orders on the motion to suppress, see Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979); G. L. c. 278, § 28E, and those appeals were consolidated with the defendant's appeal from the denial of his motion to dismiss. We conclude that the motion to dismiss was properly denied. We also

---

[1]The police officer who stopped Vanhouton administered three field sobriety tests: heel-to-toe, one-legged standing, and alphabet recitation.

[2]The Fifth Amendment (made applicable to the States through the Fourteenth Amendment to the United States Constitution) provides that no person "shall be compelled in any criminal case to be a witness against himself." Article 12 provides, in pertinent part, that "[n]o subject shall be . . . compelled to accuse, or furnish evidence against himself."

conclude that the judge correctly denied the motion to suppress with respect to the evidence of the heel-to-toe and one-legged standing tests, but that he erred in allowing that motion with respect to evidence of the alphabet recitation test.

The facts found by the judge on the motion to suppress may be summarized as follows. On the night of September 21, 1994, Officer Daniel McNeil of the Salisbury police department was on duty in a patrol car in Salisbury Center. The area was well lit. At about 11:50 P.M., Officer McNeil observed a white automobile, which was being driven erratically, make a left turn in a jerking manner. The officer followed the automobile for about 150 yards and observed it drift left to right in its own travel lane. Officer McNeil stopped the automobile and asked the driver, who was identified as the defendant, to show his license and registration. The defendant produced a valid driver's license, but could not locate his registration, which was in his lap. The officer detected a strong odor of alcohol and also noticed that the defendant's eyes were bloodshot.

After having him step out of the car, Officer McNeil asked the defendant, who, according to the findings, "appeared on the surface to be in good shape," to perform field sobriety tests. The defendant was not advised that he could refuse to take the tests. The defendant was not able to perform the heel-to-toe test, staggering to the right on the first step.[3] The defendant then failed the one-legged standing test.[4] Finally, when asked to recite the alphabet, the defendant could not complete the test, and his attempt to do so was marked by slurred speech.[5] Officer McNeil, who had watched the defendant's efforts from about three to four feet away, then placed the defendant under arrest for operating a motor vehicle while under the influence of intoxicating liquor.

---

[3]Officer McNeil described this test as requiring the defendant to "walk in a heel to toe fashion for nine steps towards [the officer] and then turn and walk in a heel to toe fashion nine steps away from [him]."

[4]Officer McNeil described this test as requiring the defendant to "stand on one leg while lifting the other leg approximately six inches off the ground . . . hold[ing] that position for approximately [twenty] seconds."

[5]With respect to the defendant's performance, Officer McNeil testified as follows: "I believe he stopped on the letters G and then K. I believe he stopped on the letter G, paused for maybe two to three seconds, and continued on to the letter K, and then stopped there again for another two or three seconds, and then continued on to the letter U, and then he stopped altogether."

The judge extensively discussed his view of the law in connection with the rulings on the motion to suppress. We shall refer to the pertinent rulings as we discuss the issues raised on appeal. We accept the judge's findings of fact as supported by the evidence, but we make our own independent determinations in the correctness of his application of constitutional principles to the facts. See *Commonwealth* v. *Cunningham*, 405 Mass. 646, 655 (1989); *Commonwealth* v. *Tavares*, 385 Mass. 140, 145, cert. denied, 457 U.S. 1137 (1982), and cases cited.

1. According to his motion to dismiss, after his arrest the defendant was taken to the police station, where he refused to take a breathalyzer test. The police seized the defendant's driver's license and issued him a temporary driving permit, as required by G. L. c. 90, § 24 (1) (*f*) (1) (i)-(iii), as appearing in St. 1994, c. 25, § 5. The defendant's motion to dismiss argued that the administrative seizure of his driver's license constituted a punishment, and that therefore his subsequent criminal prosecution for operating a motor vehicle while under the influence of intoxicating liquor gave rise to the protections against double jeopardy contained in the Fifth Amendment to the United States Constitution and Massachusetts common law. The defendant's argument is entirely foreclosed by our decisions in *Leduc* v. *Commonwealth*, 421 Mass. 433 (1995), cert. denied, 117 S. Ct. 91 (1996), and *Luk* v. *Commonwealth*, 421 Mass. 415 (1995). The motion to dismiss was correctly denied.

2. We turn to the issues pertaining to the motion to suppress. The judge ruled that the defendant was in custody at the time the field sobriety tests were given and, citing *Rhode Island* v. *Innis*, 446 U.S. 291, 301-302 (1980), that, in the judge's words, the defendant "was being 'interrogated' when he was asked to perform the field sobriety tests which [Officer McNeil] certainly knew were 'reasonably likely to elicit an incriminatory response.' " Based on these conclusions, the judge ruled, relying on *Commonwealth* v. *Brennan*, 386 Mass. 772 (1982), that evidence of the defendant's performance in the heel-to-toe and leg-standing tests was admissible because these tests involved real or physical evidence that did not implicate either the Fifth Amendment or art. 12. However, relying principally on *Pennsylvania* v. *Muniz*, 496 U.S. 582 (1990), the judge ruled that evidence of the results of the

alphabet recitation test was testimonial, implicated both privileges, and had to be suppressed.

The defendant argues that the judge's ruling that he was in custody should be upheld and that, because he was in custody, Officer McNeil was required to furnish him with the warnings required by *Miranda* v. *Arizona,* 384 U.S. 436, 444 (1966), before any field sobriety tests were administered.[6] The defendant argues further that all the tests were testimonial and, as a consequence, the results of his performance on the heel-to-toe and leg-standing tests should be suppressed. The Commonwealth argues that the judge's order with respect to the result of the heel-to-toe and leg-standing tests should be affirmed based on the holdings and reasoning of *Commonwealth* v. *Brennan, supra,* and that the order suppressing the results of the alphabet recitation test should be reversed because the defendant was not compelled to take the test, and the test does not involve testimonial evidence.

(a) The judge's ruling that the defendant was in custody during the investigation for purposes of the Fifth Amendment is wrong. A defendant's custody and the resulting need for *Miranda* warnings is a question solely of Federal constitutional law. The United States Supreme Court has expressly held that a motorist who is temporarily detained after being stopped on suspicion of operating a motor vehicle while under the influence of intoxicating liquor is not held in custody, and, as a result, the investigating police officer is not required to furnish *Miranda* warnings to the motorist before administering field sobriety tests. The Court first reached this conclusion in *Berkemer* v. *McCarty,* 468 U.S. 420, 438-440 (1984), and reiterated the holding of the *Berkemer* decision in *Pennsylvania* v. *Bruder,* 488 U.S. 9, 11 (1988), a case with facts virtually identical to the facts of this case.[7] The Appeals Court has consistently applied the holdings of these two

---

[6]The judge made no express ruling on the necessity for Miranda warnings before the tests were performed, but his rulings as to custody and interrogation clearly imply that such warnings and an intelligent waiver would be required, at least before an alphabet recitation test could be performed.

[7]In *Pennsylvania* v. *Bruder,* 488 U.S. 9, 10 (1988), the United States Supreme Court explained why routine traffic stops do not raise Miranda issues as follows: "In *Berkemer* v. *McCarty,* [468 U.S. 420 (1984)] . . . the Court concluded that the 'noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such

Federal decisions in circumstances similar to this case, and has rejected arguments that Miranda warnings were necessary on the ground that the detained motorist was not in custody. See *Commonwealth* v. *D'Agostino*, 38 Mass. App. Ct. 206, 208, *S.C.*, 421 Mass. 281 (1995); *Commonwealth* v. *Smith*, 35 Mass. App. Ct. 655, 657-658 (1993); *Commonwealth* v. *Ayre*, 31 Mass. App. Ct. 17, 20 (1991); *Commonwealth* v. *McNelley*, 28 Mass. App. Ct. 985, 986 (1990). There is nothing in the facts found by the judge that takes the case outside of a routine stop and investigation for suspected drunk driving, with the result that the *Berkemer* and *Bruder* decisions apply here.

It follows from what has been said that the defendant's argument that Miranda warnings were required must fail.[8] It also follows that Officer McNeil's request that the defendant perform field sobriety tests did not involve, with respect to any of the tests, compulsion sufficient to trigger the protection of the Fifth Amendment.[9] See *South Dakota* v. *Neville*, 459 U.S. 553, 562-563 (1983); *McAvoy* v. *State*, 314 Md. 509,

---

stops are not "in custody" for the purposes of *Miranda.*' *Id.* at 440. The Court reasoned that although the stop was unquestionably a seizure within the meaning of the Fourth Amendment, such traffic stops typically are brief, unlike a prolonged station house interrogation. Second, the Court emphasized that traffic stops commonly occur in the 'public view,' in an atmosphere far 'less "police dominated" than that surrounding the kinds of interrogation at issue in *Miranda* itself.' *Id.* at 438-439. The detained motorist's 'freedom of action' [was not] curtailed to 'a degree associated with formal arrest.' *Id.* at 440 (citing *California* v. *Beheler*, 463 U.S. 1121, 1125 [1983]). Accordingly, he was not entitled to a recitation of his constitutional rights prior to arrest, and his roadside responses to questioning were admissible" (footnote omitted). In *Bruder*, the Court also reserved the question "whether recitation of the alphabet in response to custodial questioning is testimonial and hence inadmissible under *Miranda* v. *Arizona*, 384 U.S. 436 (1946)." *Id.* at 11 n.3.

[8]The defendant also argues that, because most citizens of the Commonwealth are unaware that they can refuse roadside field sobriety tests, art. 12 requires Miranda-type warnings before such tests are administered in order to protect citizens against inadvertently furnishing evidence against themselves. Even if we accept the defendant's factual premise (about the ignorance of the average citizen as to the right to refuse), we reject his conclusion that art. 12 requires such protective warnings. The conclusion lacks any support in the language of art. 12, its purpose, or the cases that have construed it. See *Commonwealth* v. *Brennan*, 386 Mass. 772, 779-780 (1982).

[9]In *Pennsylvania* v. *Muniz*, 496 U.S. 582 (1990), a police officer arrested the defendant for operating while under the influence of intoxicating liquor

514-515 (1989); *State* v. *Bowers,* 250 Neb. 151, 163 (1996). See also *Stone* v. *Huntsville,* 656 So. 2d 404, 411 (Ala. Crim. App. 1994); *State* v. *Pilik,* 129 Idaho, 50, 53 (Ct. App. 1996); *Commonwealth* v. *Toanone,* 381 Pa. Super. 336, 345 (1989); *State* v. *Strausberg,* 895 P.2d 831, 834-335 (Utah Ct. App. 1995).

(b) We are left to determine whether the performance of any of the tests implicated the self-incrimination provision of art. 12.

The defendant's argument that the heel-to-toe and leg-standing tests constituted testimonial evidence is answered completely by *Commonwealth* v. *Brennan, supra,* where, after a thorough review and analysis of the history and purpose of the self-incrimination provision in art. 12, it was specifically held that the field sobriety tests given to Brennan, which measured his physical coordination, were not "communicative to the extent necessary to evoke the privilege" conferred by art. 12.[10] *Id.* at 783. The defendant suggests that the *Brennan* case was wrongly decided. We are not persuaded by any of his arguments on the point, and we reject the suggestion.

after the defendant failed three roadside field sobriety tests. The defendant was brought to a booking center where he answered seven standard questions, and then was asked, and was unable to give, the date of his sixth birthday. In addition, the defendant made statements while he performed physical sobriety tests and when he was asked to take a breathalyzer test and refused. The defendant's performance was preserved on videotape and audiotape and done without the furnishing of Miranda warnings. The United States Supreme Court, in a plurality opinion, concluded that the defendant's response to the sixth birthday question was testimonial, and in the absence of Miranda warnings and a waiver, had to be suppressed. The linchpin of the decision for Fifth Amendment purposes is the fact that the defendant was *in custody* when interrogated. The decision does not apply to a roadside traffic stop for suspected drunk driving where the motorist is not in custody, and the *Muniz* decision makes no change in the impact of the decisions in *Berkemer* v. *McCarty,* 468 U.S. 420 (1984), and *Pennsylvania* v. *Bruder,* 488 U.S. 9 (1988), on the administration of an alphabet recitation test during such a noncustodial roadside investigation.

[10]The field sobriety tests administered to Brennan consisted of the so-called finger-to-nose test, picking up coins from the floor, and walking a straight line. When the tests were given Brennan had been arrested for operating a motor vehicle while under the influence of intoxicating liquor, and he performed the tests at the police station. *Brennan, supra* at 773-774. Brennan, therefore, was in custody for purposes of Fifth Amendment analysis. The court in *Brennan* appears to have assumed the presence of compulsion for the purposes of art. 12. *Id.* at 779.

The alphabet recitation test was not one of the tests involved in the *Brennan* case. We do not generally consider the application of art. 12 in terms of custody or noncustody. This distinction is part of Federal constitutional law designed to protect a suspect's or accused's rights under the Fifth Amendment, and the distinction lies at the root of the application of the Federal privilege that requires Miranda warnings before law enforcement officers engage in questioning that is likely to incriminate the suspect or accused. Nevertheless, it is arguable that the defendant was not "compelled" to take the alphabet recitation test so as to raise self-incrimination concerns under art. 12. The defendant was free to refuse to perform any of the field sobriety tests requested by Officer McNeil, and the communicative fact of his refusal could not be admitted in evidence against him at trial. See *Commonwealth* v. *McGrail*, 419 Mass. 774, 779-780 (1995). On the other hand, the defendant's refusal to take the test undoubtedly would have led to his continued detention and further questioning, after which Officer McNeil, rightly or wrongly, likely would have relied on the defendant's refusal as a basis for placing him under arrest.

We choose to pass on the question whether the defendant was "compelled," in the sense that the term is used in art. 12, to take the alphabet recitation test, and rest our decision that suppression is not required on the ground that the test does not evoke evidence within the scope of art. 12.[11]

The self-incrimination provision in art. 12 protects against the forced disclosure of testimonial or communicative evidence, namely evidence that reveals the subject's knowledge or thoughts concerning some fact. See *Commonwealth* v. *Brennan, supra* at 780. With respect to art. 12, we said the following in *Commonwealth* v. *Brennan, supra*:

"It has been said that art. 12 and the many similar constitutional provisions of other States merely restated

[11]The Commonwealth in its brief has raised the compulsion point in connection with art. 12. The judge and the defendant have not dealt with the issue, undoubtedly because of the judge's conclusion that the defendant was in custody when the field sobriety tests were administered. The short discussion in the Commonwealth's brief does not furnish a basis for a reasoned examination whether compulsion existed for purposes of art. 12, and there appears to be very little Massachusetts case law on the question. See P.J. Liacos, Massachusetts Evidence § 13.13.2, at 779-780 (6th ed. 1994).

the common law rule against self-incrimination. *Commonwealth* v. *Joyce*, 326 Mass. 751, 756, 757 (1951). *Brown* v. *Walker*, 161 U.S. 591, 596-597 (1896). See generally 8 J. Wigmore, Evidence §§ 2250, 2251 (McNaughton rev. 1961); Pittman, The Colonial and Constitutional History of the Privilege Against Self-Incrimination in America, 21 Va. L. Rev. 763 (1935). The common law privilege evolved from general disapproval of the inquisitorial practices that existed prior to 1700 in the ecclesiastical courts and the courts of Star Chamber and High Commission in England. See E. Dumbauld, The Bill of Rights, and What It Means Today 77 (1957). 8 J. Wigmore, *supra.* McCormick, Evidence § 114 (2d ed. 1972). Even a cursory review of the history of the privilege leaves little doubt that the privilege was directed toward the forced extraction of confessions and admissions from the lips of the accused. This suggests that the framers of our Declaration of Rights did not contemplate that art. 12 apply to real or physical evidence, the production of which would have no inherently communicative value."

We also emphasized in the *Brennan* decision that "[t]he refusal of most courts to adopt an expansive interpretation of the [self-incrimination] privilege [contained in their State Constitutions] has undoubtedly stemmed in part from a concern for the severe constraints on law enforcement practices that would otherwise result, and from the fact that compelled production of physical evidence is far less offensive to common standards of decency." *Id.* at 782-783.

The recitation of the alphabet from A to Z is an exercise, which when utilized as a field sobriety test with a suspect asked to perform the test in his or her own language, is not subject to the privilege contained in art. 12. The fact that a motorist must use his or her voice to perform the test does not necessarily make the response testimonial any more so than would the giving of a voice exemplar. The alphabet constitutes a set of generic linguistic symbols that the average person masters early in life and learns to recite by rote. The alphabet cannot be fabricated or guessed at, so a person reciting it is not faced with the dilemma of deciding between a true or false answer. As such, the recitation of the alphabet

lacks inherent communicative value because it does not convey knowledge of any fact specific to the person being questioned. In a roadside drunk driving inquiry by a police officer, the recitation determines only whether the motorist's memory is impaired and whether the motorist has sufficient mental coordination to perform a rudimentary psychological exercise. In this respect, the test is directed at the reflexive functioning of the motorist's mental processes, and it provides a basis for ascertaining the extent to which those processes may be affected by the motorist's consumption of alcohol. Further, the fact that the motorist might slur his or her speech while reciting the alphabet, thereby indicating intoxication, is not significant. "The physical inability to articulate words in a clear manner due to 'the lack of muscular coordination of . . . tongue and mouth' . . . is not itself a testimonial component of [the suspect's] responses to [the investigating police officer's] . . . questions." *Pennsylvania* v. *Muniz, supra* at 590-591. "Certainly, [the defendant's] inability to recite the alphabet . . . incriminated him. Intoxication increases reaction time and reduces speed of motor responses, including those of auditory discrimination and judgment. . . . The [test] did not require the [defendant] to disclose his knowledge of his intoxication. [The test combined with the physical coordination tests] elicited tangible evidence of the . . . condition of the [defendant's] body. The responses were no more testimonial or communicative than a voice exemplar . . . or a blood sample . . ." (citations omitted). *Edwards* v. *Bray,* 688 F.2d 91, 92 (10th Cir. 1982).

The same conclusion has been reached by the vast majority of other jurisdictions that have addressed the issue. The decisions hold that a straightforward alphabet recitation test (or comparable counting exercises), performed during a roadside investigation of suspected drunk driving, is outside the protective sphere of the privilege against self-incrimination because there is no disclosure of subjective knowledge or thought processes in a constitutionally prohibited sense. See *State* v. *Superior Court,* 154 Ariz. 275 (Ct. App. 1987); *Oxholm* v. *District of Columbia,* 464 A.2d 113, 114 (D.C. 1983); *Lankford* v. *State,* 204 Ga. App. 405, 406-407 (1992), cert. denied, 506 U.S. 1051 (1993); *People* v. *Bugbee,* 201 Ill. App. 3d 952, 959 (1990); *State* v. *Maze,* 16 Kan. App. 2d 527, 532 (1992); *People* v. *Burhans,* 166 Mich. App. 758, 762-763 (1988)

Vanhouton *v.* Commonwealth.

(counting test); *State* v. *Thompson,* 237 Mont. 384, 387 (1989); *State* v. *Zummach,* 467 N.W.2d 745, 746 (N.D. 1991); *State* v. *Medenbach,* 48 Or. App. 133 (1980); *State* v. *Meek,* 444 N.W.2d 48, 50 (S.D. 1989).[12]

3. The order denying the defendant's motion to dismiss is affirmed. The order allowing the defendant's motion to suppress with respect to evidence of the alphabet recitation test is reversed, and that part of the motion is denied. The order denying the remainder of the motion to suppress with respect to evidence of the heel-to-toe and leg-standing tests is affirmed.

*So ordered.*

[12]Only two States have concluded that an alphabet recitation test constitutes evidence protected by the privilege against self-incrimination. See *Allred* v. *State,* 622 So. 2d 984, 987 (Fla. 1993) (under *Traylor* v. *State,* 596 So. 2d 956 [Fla. 1992], alphabet recitation test is "[i]nterrogation[:] . . . express questions . . . that a reasonable person would conclude are designed to lead to an incriminating response"); *Vickers* v. *State,* 878 S.W.2d 329, 330 (Tex. Ct. App. 1994) (alphabet recitation test showed defendant's "mind was confused"; test should have been suppressed because it was "testimonial in nature"). These conclusions have recently been called into question. See *State* v. *Taylor,* 648 So. 2d 701, 704 (Fla. 1995) (field sobriety tests do not violate any Fourth Amendment rights); *State* v. *Burns,* 661 So. 2d 842, 845 (Fla. Dist. Ct. App. 1995) (reviewing *Traylor, supra,* and concluding that, under Florida Constitution, routine traffic stops are not custodial and therefore Miranda warnings are not required before administering roadside sobriety tests, including alphabet and counting tests); *Vester* v. *State,* 916 S.W.2d 708, 712-713 (Tex. Ct. App. 1996) (spoken roadside sobriety tests are nontestimonial; such tests do not involve an express or implied assertion of fact or belief).