COMMONWEALTH *vs.* NANCY CAMERON. No. 97-P-1050. February 4, 1998. *Constitutional Law,* Self-incrimination, Admissions and confessions. *Evidence,* Field sobriety test, Admissions and confessions. *Motor Vehicle,* Operating under the influence.

A complaint was issued in the Lawrence District Court charging the defendant with operating a motor vehicle under the influence of intoxicating liquor. The defendant moved to suppress statements she made to the arresting officer and the results of field sobriety tests. The judge allowed the motion after a hearing. The Commonwealth appeals, pursuant to Mass.R.Crim.P. 15(a)(2), 378 Mass. 882 (1979), on the grounds that (1) the judge erred in ruling that Miranda warnings were required prior to the performance of field sobriety tests; and (2) the judge erred in finding that the defendant was in custody and, therefore, should have been given Miranda warnings prior to police questioning. We reverse.

We summarize the evidence presented at the hearing on the motion to suppress. On May 31, 1996, at approximately 11:49 P.M., Officer John Pickard of the North Andover police department was on duty, patrolling Salem Street. Officer Pickard observed an automobile parked at the side of the road with its

four-way hazard lights flashing. The defendant, who was walking near the automobile, told Officer Pickard that the car belonged to her and that it had a flat tire. Officer Pickard had American Automobile Association (AAA) roadside service contacted to repair the defendant's car after learning that she had this service.

Officer Pickard cancelled the AAA service and requested police backup to his location after he observed the defendant's staggering walk and the odor of alcohol on her breath. Thereafter, Pickard asked the defendant a series of questions, including whether she had been drinking, where she was traveling from, and how long she had been traveling on the flat tire. The defendant responded that she went out after work and consumed two margaritas. Officer Pickard then administered three field sobriety tests, all of which the defendant failed. He concluded that she was intoxicated and placed her under arrest. She was transported to the police station where she was given her Miranda warnings.

1. *Suppression of real or physical evidence.* The judge ruled that because Officer Pickard did not furnish the defendant with the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966), prior to administering the field sobriety tests, the test results must be suppressed.

Miranda warnings were designed to "secure the privilege against self-incrimination" during custodial interrogation. *Id.* The privilege against self-incrimination, however, "protects only against the compulsion of 'communications,' or 'testimony.' It does not bar compulsion 'which makes a suspect or accused the source of real or physical evidence.' " *Commonwealth* v. *Brennan*, 386 Mass. 772, 776 (1982), quoting from *Schmerber* v. *California*, 384 U.S. 757, 764 (1966). Because field sobriety tests have been held not to elicit testimonial or communicative evidence, they do not trigger the protections afforded by the Fifth Amendment to the United States Constitution or the self-incrimination provision of art. 12 of the Massachusetts Declaration of Rights.[1] *Commonwealth* v. *Brennan*, 386 Mass. at 779, 783. Thus, contrary to the judge's decision, Miranda warnings were not required prior to conducting the field sobriety tests.[2]

2. *Custody issue.* The judge ruled that the defendant was in custody when

---

[1]The field sobriety tests administered to the defendant, the so-called walk and turn test, one leg stand, and recitation of the alphabet, are the types of tests that have been held not to elicit testimonial or communicative evidence. See *Commonwealth* v. *Brennan*, 386 Mass. at 774 (field sobriety tests consisted of the finger-to-nose test, picking up coins from the floor, and walking a straight line); *Vanhouton* v. *Commonwealth*, 424 Mass. 327, 336 (1997) (followed the majority view, which holds that "a recitation test . . ., performed during a roadside investigation of suspected drunk driving, is outside the protective sphere of the privilege against self-incrimination because there is no disclosure of subjective knowledge or thought processes in a constitutionally prohibited sense").

[2]The defendant does not refute the principle that field sobriety tests do not trigger the protections afforded by the Fifth Amendment or art. 12. Instead, she argues, for the first time on appeal, that the decision to suppress the field sobriety tests should be upheld because the tests were taken in violation of her rights under the Fourth Amendment to the Constitution of the United States and art. 14 of the Declaration of Rights.

Under the Fourth Amendment, a police officer "who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to

Officer Pickard cancelled the AAA roadside service and, therefore, should have been given Miranda warnings before questioning or administration of field sobriety tests.

Miranda warnings, as mentioned, are required only during custodial interrogation. *Miranda* v. *Arizona*, 384 U.S. at 461. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Commonwealth* v. *Bryant*, 390 Mass. 729, 736 (1984), quoting from *Miranda* v. *Arizona*, 384 U.S. at 444. The determination of whether an encounter between a suspect and a police officer is properly characterized as custodial is governed by an objective standard. See *Commonwealth* v. *Buckley*, 410 Mass. 209, 216 (1991), citing *Commonwealth* v. *Tart*, 408 Mass. 249, 258 (1990). The proper inquiry is "whether, from the point of view of the person being questioned, the interrogation took place in a coercive environment — by reference to objective indicia."[3] *Commonwealth* v. *Bryant*, 390 Mass. at 736.

Applying these criteria to the circumstances of this case, we conclude that the temporary detention, questioning, and administering of field sobriety tests did not constitute custodial interrogation. Clearly, "a motorist who is temporarily detained after being stopped on suspicion of operating a motor vehicle while under the influence of intoxicating liquor is not held in custody, and, as a result, the investigating police officer is not required to furnish Miranda warnings to the motorist before administering field sobriety tests." *Vanhouton* v. *Commonwealth*, 424 Mass. 327, 331 (1997), and cases cited. Moreover, "[t]here is no requirement that warnings be given prior to '[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process.' " *Commonwealth* v. *Merritt*, 14 Mass. App. Ct. 601, 604 (1982), quoting from *Miranda* v. *Arizona*, 384 U.S. at 477. The fact that the defendant's responses to some of the on-the-scene questions were admissions does not convert the interview into a custodial interrogation. See *Commonwealth* v. *McNelley*, 28 Mass. App. Ct. 985, 986 (1990).

The record is devoid of any facts that take this case outside a routine stop and investigation for suspected drunk driving. The stop was "brief" and occurred in "public view," and the defendant's " 'freedom of action' [was not]

'investigate the circumstances that provoke suspicion.' " *Berkemer* v. *McCarty*, 468 U.S. 420, 439 (1984), quoting from *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 881 (1975). After witnessing the defendant's staggering walk and the odor of alcohol on her breath, Officer Pickard proceeded to ask the defendant a few questions and conduct field sobriety tests "to try to obtain information confirming or dispelling [his] suspicions." *Id.* Officer Pickard then placed the defendant under arrest because her answers to his questions and the results of the field sobriety tests provided him with probable cause.

[3]The factors considered when determining whether an interrogation is custodial include "(1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with the defendant's arrest." *Commonwealth* v. *Buckley*, 410 Mass. at 217, quoting from *Commonwealth* v. *Bryant*, 390 Mass. at 737.

curtailed to 'a degree associated with formal arrest.' " *Vanhouton* v. *Commonwealth*, 424 Mass. at 332 n.7, quoting from *Pennsylvania* v. *Bruder*, 488 U.S. 9, 10 (1988). We reject the contention that the cancellation of the AAA call rendered the defendant "in custody." There is no evidence that the defendant was aware of this cancellation so as to cause her to be mentally or physically intimidated or to perceive herself to be restrained. See *Commonwealth* v. *Bryant*, 390 Mass. at 739. "The fact that the defendant was not free to leave (at least until the performance of the field sobriety tests) did not render the interrogation custodial." *Commonwealth* v. *Ayre*, 31 Mass. App. Ct. 17, 20 (1991), and cases cited.

Although Officer Pickard apparently formed an opinion regarding the defendant's sobriety prior to cancelling the AAA service, he never communicated his opinion or intentions to the defendant. A police officer's "unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood [her] situation."[4] *Berkemer* v. *McCarty*, 468 U.S. 420, 442 (1984). See *Commonwealth* v. *Bryant*, 390 Mass. at 739 n.11, and cases cited (recognizing that "[a]lthough the officer may have an intent to make an arrest, either formed prior to, or during the questioning, this is not a factor in determining whether there is present 'in-custody' questioning. It is the officer's statements and acts, the surrounding circumstances, gauged by a 'reasonable man' test, which are determinative").

We conclude, therefore, that the record presents a single police officer who asked the defendant a reasonable number of questions and requested her to perform three field sobriety tests at a place visible to traveling motorists. This type of treatment "cannot fairly be characterized as the functional equivalent of formal arrest." *Berkemer* v. *McCarty*, 468 U.S. at 442.

Accordingly, the defendant was not taken into custody for purposes of Miranda until Officer Pickard placed her under arrest. Consequently, the defendant's statements and the sobriety tests are admissible against her.

*Order allowing motion to suppress reversed.*

*Nicole M. Procida*, Assistant District Attorney, for the Commonwealth.
*Daniel P. Tarlow* for the defendant.

---

[4]The judge erroneously focused on Officer Pickard's opinion of the defendant's sobriety, which the judge finds he formed prior to cancelling the AAA service, as a factor in determining custody for purposes of Miranda. The judge states:

"Prior to cancelling the AAA service, the officer had formed an opinion that the defendant was not sober. At that point, the defendant was clearly not free to leave (her car was not driveable). The officer at that point did not tell the defendant she was under suspicion for OUI. He should have advised her of her Miranda Rights at that time. . . ."

The subjective standard that the judge seemed to apply has not been endorsed by the United States Supreme Court or the appellate courts of this Commonwealth. *Commonwealth* v. *Bryant*, 390 Mass. at 739 n.11.