## Commonwealth vs. Thomas L. LaFleur

No. 02-P-1032.

Plymouth. May 7, 2003. - July 14, 2003.

Present: Mason, Berry, & Kafker, JJ.

*Practice, Criminal,* Motion to suppress, Admissions and confessions. *Constitutional Law,* Admissions and confessions.

At the hearing on a motion to suppress statements made to a police officer by a defendant in a criminal case, evidence that questioning occurred in public in the presence of emergency medical technicians (EMTs) and one police officer; that the officer did not convey to the defendant that he was suspected of a crime; that the interrogation was brief and influenced by what the defendant told the EMTs; and that a reasonable person in the defendant's position would have understood that his detention was by medical personnel for medical purposes, and its length would therefore be determined by his medical condition, did not create an inherently coercive, police-dominated situation that would have triggered the protections afforded by *Miranda* v. *Arizona,* 384 U.S. 436 (1966). [547-551]

Complaint received and sworn to in the Wareham Division of the District Court Department on February 8, 2002.

A pretrial motion to suppress evidence was heard by *Rosemary Minehan,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Martha B. Sosman,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

*Tracy L. Bulger,* Assistant District Attorney, for the Commonwealth.

*Paul Alan Bogosian* for the defendant.

Kafker, J. The defendant sought to suppress statements he made to a police officer while he was strapped to a stretcher and receiving medical assistance. The District Court judge allowed the motion to suppress concluding that the defendant, who had

not been given Miranda warnings, was in custody when he made the statements. We reverse.

The judge found the following facts, none of which is alleged to be clearly erroneous: Police Officer Stephen Joy was dispatched to the scene of a two-car accident where he observed the defendant seated in the driver's seat of one of the cars. The officer noted that the defendant appeared to be "dazed and confused" and that his breath smelled of alcohol. Although he had a severe laceration on his forehead, the defendant attempted to get out of his car. Officer Joy prevented him from doing so until emergency medical technicians (EMT) arrived.

Upon their arrival, EMT personnel removed the defendant from his vehicle, strapped him to a stretcher, and placed him in an ambulance. In response to an EMT's question about what had happened, the defendant stated, "I had too much to drink." The EMT informed Officer Joy of this statement, and the officer asked the defendant what he had had to drink. The defendant answered that he had consumed alcoholic beverages at two local establishments during the evening. When the officer asked him if the alcohol had affected his ability to operate his motor vehicle, the defendant responded that it probably had affected his ability to drive. The defendant was thereafter taken to the hospital. Officer Joy asked similar questions of the defendant in the emergency room. The defendant gave the same answers. In addition, at the emergency room, the officer also administered a field sobriety test to the defendant, asking him to recite the alphabet. The defendant failed the test. Officer Joy did not read the defendant his Miranda rights at any time before questioning him.

The motion judge concluded that when the officer first noticed the odor of alcohol on the defendant's breath, he had reasonable suspicion that the defendant had committed a crime, and when he questioned the defendant while he was strapped to a stretcher, the defendant was in custody, and entitled to Miranda warnings. The judge therefore suppressed the defendant's statements to the officer at the accident scene and the hospital.

When reviewing a decision on a motion to suppress, we accept the judge's findings unless they are clearly erroneous, but we review independently the judge's application of constitu-

tional principles to those facts. *Commonwealth* v. *James*, 427 Mass. 312, 314 (1998). As the judge's fact-finding is not contested, the question becomes whether these facts establish that the defendant was in custody when the questioning occurred.

The "safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' " *Commonwealth* v. *Morse*, 427 Mass. 117, 123 (1998), quoting from *Berkemer* v. *McCarty*, 468 U.S. 420, 440 (1984). Ordinary traffic stops, including those involving operators suspected of driving under the influence, have not been held to be custodial. See *Berkemer* v. *McCarty*, 468 U.S. at 437-439; *Vanhouton* v. *Commonwealth*, 424 Mass. 327, 331, cert. denied, 522 U.S. 834 (1997); *Commonwealth* v. *Cameron*, 44 Mass. App. Ct. 912, 914 (1998). The same is true for many *Terry*[1] stops, where police "may detain [a] person briefly in order to 'investigate the circumstances that provoke suspicion.' " *Berkemer* v. *McCarty*, *supra* at 439, quoting from *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 881 (1975). Moreover, the Court in *Berkemer* analogized traffic stops to the "comparatively nonthreatening character" of *Terry* stops and commented on "the absence of any suggestion in our opinions that *Terry* stops are subject to dictates of *Miranda.*" *Berkemer* v. *McCarty*, *supra* at 440. Compare *Commonwealth* v. *Gordon*, 47 Mass. App. Ct. 825, 827 (1999), quoting from *United States* v. *Bautista*, 684 F.2d 1286, 1291 (9th Cir. 1982), cert. denied, 459 U.S. 1211 (1983) ("Miranda warnings are necessary even during a *Terry* stop if the suspect has been taken into custody or if the questioning otherwise takes place in a police dominated or compelling atmosphere").

In determining whether an interrogation is custodial, the relevant inquiry is "how a reasonable [person] in the [defendant's] position would have understood his situation." *Berkemer* v. *McCarty*, 468 U.S. at 442. *Commonwealth* v. *Damiano*, 422 Mass. 10, 13 (1996) ("The crucial question is whether, considering all the circumstances, a reasonable person in the defendant's position would have believed that he was in

---

[1]*Terry* v. *Ohio*, 392 U.S. 1 (1968).

custody"). Through a multi-factor inquiry,[2] the courts focus on whether the interrogation took place in a "police-dominated atmosphere," *Miranda* v. *Arizona*, 384 U.S. 436, 445 (1966), where "inherently compelling pressures . . . work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 467. In concluding that ordinary traffic stops were not custodial, the Supreme Court emphasized that such stops tend to be brief and public with one or at most two officers present and therefore quite different from station house interrogation. *Berkemer* v. *McCarty*, 468 U.S. at 437-438.

Courts in other jurisdictions have addressed whether a suspect who is restrained for medical treatment by medical personnel must be informed of his Miranda rights before he is subjected to questions from police officers. These cases generally hold that there is no custodial interrogation in these circumstances. See, e.g., *Wilson* v. *Coon*, 808 F.2d 688, 690 (8th Cir. 1987). See also *People* v. *Mosley*, 73 Cal. App. 4th 1081, 1090-1091 (1999); *Connecticut* v. *DesLaurier*, 230 Conn. 572, 580-581 (1994); *New Hampshire* v. *Tucker*, 131 N.H. 526, 530 (1989). A few earlier decisions reached the opposite conclusion. See, e.g., *Robinson* v. *State*, 45 Ala. App. 74 (1969); *Commonwealth* v. *D'Nicuola*, 448 Pa. 54 (1972). A particularly cogent explication of the principles involved appears in *Wilson* v. *Coon*, 808 F.2d at 689, a widely cited case with facts similar to those presented here. In that case, a police officer arrived at the scene of a two-car collision and saw the defendant crawling around at the bottom of an embankment and "belligerently refusing medical attention." The officer assisted the medical attendants, and while one of them restrained the defendant and examined him for

---

[2]See, e.g., *Commonwealth* v. *Groome*, 435 Mass. 201, 211-212 (2001) (inquiry whether an interrogation is custodial focuses on "[1] the place of the interrogation; [2] whether the officers have conveyed to the person being questioned any belief or opinion that that person is a suspect; [3] the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the person being interviewed; [4] whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest").

injuries, the officer asked the defendant if he was the driver of one of the cars.[3]

In *Wilson*, the Eighth Circuit Court of Appeals emphasized that a reasonable person would expect that restraint by ambulance personnel would "last only for the time that is medically necessary and would feel free to leave after then." Moreover, as the physical restraint on the defendant was applied by ambulance attendants for medical purposes, rather than by law enforcement officers for investigative purposes, "[a] reasonable person would perceive this detention as imposed only for purposes of a medical examination, not a police interrogation." *Id.* at 690. Finally, the detention's occurring in public and in the presence of medical attendants "reduces the likelihood that law enforcement agents will use oppressive or abusive tactics and renders the situation less 'police-dominated.' " *Ibid.* The court concluded that the concerns triggering Miranda protections — that compelling and lasting pressure would work to undermine the individual's will to resist questioning — were therefore not present.

The insights of *Wilson* inform the application of the familiar four factors to the issue whether the defendant in the instant case was in custody when questioned. See note 2, *supra.* (1) The questioning occurred in public and EMT personnel were present thereby diminishing the possibility of police domination. See *Miranda* v. *Arizona*, 384 U.S. at 445. Officer Joy was also apparently the only police officer present during the questioning. (2) Joy did not convey to the defendant that he was suspected of a crime. (3) The interrogation was brief and "influenced in its contours" by what the defendant told the EMT personnel. (4) Finally, a reasonable person in the defendant's position would have understood that his detention was by medical

---

[3]In that case, although the defendant was also taken to the hospital, there was no issue regarding questioning there. In the instant case, we need not address the legality of the questioning at the hospital as there is no argument that the questions or answers were any different there than at the accident site, with the exception of the alphabet test, which is nontestimonial. See *Vanhouton* v. *Commonwealth*, 424 Mass. at 335-336. As a result, the statements at the hospital were merely repetitive and cumulative of statements at the accident scene. Furthermore, the judge's fact-finding regarding the circumstances of the questioning in the emergency room was quite limited.

personnel for medical purposes, and its length would therefore be determined by his medical condition, not by his refusal to provide answers to questions posed by Officer Joy.[4] As a result, a reasonable person in the defendant's position would not have felt compelled to answer the officer's questions while he was confined to the stretcher. We conclude that the defendant's physical restraint by the EMTs did not create an inherently coercive, police-dominated situation, and the protections of *Miranda* were not triggered. *Commonwealth* v. *Bryant*, 390 Mass. 729, 737-738 (1984).[5]

> *Order allowing motion to sup-*
> *press reversed.*

---

[4]The ambulance attendants were not agents of the police. *Commonwealth* v. *McCambridge*, 44 Mass. App. Ct. 285, 289-290 (1998).

[5]We note that because the trial judge suppressed the statements based on the failure to give Miranda warnings, she did not address the voluntariness of the statements. The issue of voluntariness was raised in the motion to suppress but was not developed in an affidavit or at the hearing on the motion. With this limited record, we decline to address the defendant's appellate argument as to the voluntariness of the statements. Of course, if a substantial claim of involuntariness is a live issue at trial, the issue must be addressed by the judge prior to the admission of the statements. *Commonwealth* v. *Brady*, 380 Mass. 44, 48 (1980).