COMMONWEALTH vs. STEPHEN M. McGRAIL.

No. 10-P-571.

Middlesex. July 12, 2011. - September 2, 2011.

Present: MILLS, GREEN, & KATZMANN, JJ.

*Practice, Criminal,* Confrontation of witnesses, Motion to suppress, Admissions and confessions. *Constitutional Law,* Confrontation of witnesses, Admissions and confessions, Search and seizure. *Evidence,* Scientific test, Blood sample, Expert opinion, Cross-examination, Hearsay. *Deoxyribonucleic Acid. Search and Seizure,* Blood sample.

At a criminal trial, the admission of opinion testimony by an expert witness based on his independent analysis of the results of laboratory testing of deoxyribonucleic acid samples performed by another, nontestifying analyst, did not violate the defendant's rights under the confrontation clause of the Sixth Amendment to the United States Constitution, where the witness's opinion was independently admissible evidence and where the defendant had the opportunity to subject the witness to detailed cross-examination. [341-344]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the erroneous admission in evidence of charts detailing deoxyribonucleic acid (DNA) test results based on an analysis performed by a nontestifying analyst, where the charts and numerical data contained in them had little probative value independent of other, correctly admitted expert opinion testimony concerning the statistical likelihood of an apparent DNA match, and where the balance of the admissible evidence overwhelmingly proved that the defendant operated the automobile from which the DNA samples were taken. [344-345]

A Superior Court judge properly denied a criminal defendant's pretrial motion to suppress statements made to police officers at the scene of an automobile accident and at a hospital, where the judge's finding that any questioning was noncustodial was well supported, and where the defendant's remarks and actions on the night of the crash indicated that his statements were voluntary, despite any possible disorientation, injuries, or intoxication. [345-347]

A Superior Court judge properly denied a criminal defendant's pretrial motion to suppress the results of blood alcohol testing conducted on a blood sample drawn by a physician at the hospital where the defendant was treated following an automobile accident, given that the test was conducted by the doctor solely for the diagnosis and treatment of the defendant as a patient, not for law enforcement purposes. [347]

INDICTMENTS found and returned in the Superior Court Department on January 30, 2007.

Pretrial motions to suppress evidence were heard by *Thomas P. Billings*, J., and *Diane M. Kottmyer*, J., and the cases were tried before *Kottmyer*, J.

*James M. Fox* for the defendant.

*Michael A. Kaneb*, Assistant District Attorney (*Christopher Tarrant*, Assistant District Attorney, with him) for the Commonwealth.

KATZMANN, J. At approximately 1:45 A.M. on November 18, 2006, the defendant was involved in a motor vehicle accident when the pick-up truck in which he was traveling collided with a utility pole along a public road in Framingham. The truck, owned by the defendant, sustained severe front-end damage. Officers responding to the crash located the defendant about one-half mile from the scene of the accident. The defendant smelled of alcohol, was staggering, and was bleeding from his head and elbow. Criminal charges ensued. Following a four-day jury trial in Superior Court, where the defendant disputed that he was the driver of the vehicle, he was convicted of operating a motor vehicle while under the influence of intoxicating liquor (OUI) in violation of G. L. c. 90, § 24(1)(*a*)(1), and leaving the scene after an accident in violation of G. L. c. 90, § 24(2)(*a*).[1] He now appeals, claiming that the admission of certain testimony involving deoxyribonucleic acid (DNA) testing violated his confrontation rights under the Sixth Amendment to the United States Constitution. He also challenges the denials of his motions to suppress the results of a blood alcohol test and statements he made to police officers prior to his arrest. We affirm.

*Discussion. A. Confrontation clause.* The testimony of a police officer and a chemist employed by the State police crime laboratory (lab) established that samples taken from the defendant's truck for testing by the lab's DNA unit included the following: a cutting from a blood-stained area of the deployed driver's-side airbag; cotton swabs of other areas of the airbag; a swab of blood from the driver's-side interior door panel; and a swab of an area of blood, hair, and skin found on the interior side of the windshield. Later at trial, Brian Cunningham, a supervisor in the lab's DNA unit, testified as an expert witness for the

---

[1] The defendant subsequently pleaded guilty to the fifth offense portion of the OUI indictment.

Commonwealth.[2] Cunningham explained the science behind DNA analysis, and how he used the results of lab tests performed on the DNA samples by Elizabeth Lewandowski, a nontestifying analyst,[3] to conduct his own statistical analysis. He testified that the windshield swab and airbag cutting contained DNA from a single individual having a DNA profile that matched the defendant's profile (which was derived from a known saliva sample). Cunningham indicated that on the swabs of other areas of the airbag and of the door panel, there was a mixture of DNA from more than one individual source, but the "major" DNA profile[4] found in these samples matched the defendant's. Cunningham offered his expert opinion about the extremely low mathematical likelihood that DNA from someone other than the defendant would match this DNA profile.[5] When Cunningham testified as to the numerical details of the laboratory analysis, these details and others from Lewandowski's lab report were also presented to the jury in the form of charts.

The defendant argues that in light of *Crawford* v. *Washington*, 541 U.S. 36 (2004), *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), and *Bullcoming* v. *New Mexico*, 131 S. Ct. 2705 (2011), the introduction of the DNA test results through a lab supervisor, rather than the analyst who performed the tests, violated his confrontation clause rights. Cunningham's expert testimony and the DNA charts require distinct legal treatment, and thus are discussed separately.

---

[2]Cunningham testified that his role as a supervisor and chemist involves analyzing forensic evidence processed by the DNA unit, generating DNA reports, overseeing a team of five DNA analysts, assigning casework, assisting his team in resolving problems, testifying in court, and responding to crime scenes.

[3]As her lab supervisor, Cunningham reviewed the procedure and results of the underlying analysis.

[4]Cunningham explained that a "major" DNA profile "comes across [in the testing] consistently at much higher levels than the rest of [the] mixture."

[5]Cunningham testified that the DNA from the airbag cutting matched the defendant's DNA profile and that the probability of a randomly selected, unrelated individual having a DNA profile also matching was approximately "one in 70.47 quadrillion in the Caucasian population, one in 105.6 quadrillion of the African American population, and one in 11.97 quadrillion of the Hispanic population." Cunningham indicated that identical probabilities applied with respect to the windshield sample and the "major" DNA profile found on the airbag swabs and the door panel swab.

1. *Cunningham's expert testimony.* In *Melendez-Diaz, supra* at 2531-2532, the United States Supreme Court held that the Sixth Amendment generally prohibits the introduction at trial of a forensic laboratory report (there, certificates of drug analysis) that was created specifically to serve as evidence in a criminal proceeding and is unaccompanied by an opportunity to cross-examine the person who made the report. In *Bullcoming,* addressing "surrogate" testimony as to a test of a defendant's blood alcohol level, the Court elaborated further that the confrontation clause did not permit "the prosecution to introduce a forensic laboratory report containing a testimonial certification — made for the purpose of proving a particular fact — through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification. . . . The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." 131 S. Ct. at 2710. Cf. *id.* at 2716 ("[T]he State [did not] assert that [the testifying scientist] had any 'independent opinion' concerning [the defendant's] blood alcohol level"). What *Bullcoming* did not present was "a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence." *Id.* at 2722 (Sotomayor, J., concurring in part). That issue, not addressed by the Supreme Court in *Bullcoming,* is precisely the question presented by the defendant here.[6] That issue has been addressed by the Supreme Judicial Court in cases that have developed rules governing testimony by an expert witness based on that expert's review of factual findings generated by another, nontestifying analyst. See, e.g., *Commonwealth* v. *Barbosa,* 457 Mass. 773, 780-793 (2010), cert. denied, 131 S. Ct. 2441 (2011) (DNA evidence); *Commonwealth* v. *Greineder,* 458 Mass. 207, 235-239 (2010), petition

---

[6]We note that on June 28, 2011, the Supreme Court granted certiorari in *People* v. *Williams,* 238 Ill. 2d 125 (2010), cert. granted, 131 S. Ct. 3090 (2011). According to the Supreme Court's docket, the question presented in *Williams* is "[w]hether a state rule of evidence allowing an expert witness to testify about the results of DNA testing performed by non-testifying analysts, where the defendant has no opportunity to confront the actual analysts, violates the Confrontation Clause."

for cert. filed (U.S. Jan. 28, 2011) (No. 10-8835) (DNA evidence); *Commonwealth* v. *McCowen,* 458 Mass. 461, 482-484 (2010) (DNA evidence). See also *Commonwealth* v. *Avila,* 454 Mass. 744, 759-763 (2009) (autopsy report); *Commonwealth* v. *Taskey,* 78 Mass. App. Ct. 787, 792-797 (2011) (DNA evidence). Those cases are controlling here.

An expert may give opinion testimony based on hearsay when the particular hearsay would be independently admissible if presented by the "right witness" or with a proper foundation, and if it is the type of evidence on which experts customarily rely as a basis for opinion testimony. See *Commonwealth* v. *Barbosa,* 457 Mass. at 784-785; *Greineder,* 458 Mass. at 236. See also *Commonwealth* v. *Markvart,* 437 Mass. 331, 337 (2002), quoting from *Department of Youth Servs.* v. *A Juvenile,* 398 Mass. 516, 531 (1986). Expert testimony by a laboratory supervisor concerning the statistical probability that another individual's DNA would match the DNA profile in question does not violate the confrontation clause, even when the opinion is based on test data not properly admitted in evidence. See *Greineder,* 458 Mass. at 236. See also *Commonwealth* v. *Nardi,* 452 Mass. 379, 387-391 (2008). Such testimony does not violate the Sixth Amendment, in part because the expert witness is subject to cross-examination about his opinion as well as "the risk of evidence being mishandled or mislabeled, or of data being fabricated or manipulated, and as to whether the expert's opinion is vulnerable to these risks." *Barbosa,* 457 Mass. at 791.

At trial, Cunningham expressed his own expert opinion based on an independent analysis of the data presented to him. This opinion was independently admissible evidence. Although relying on the analysis conducted by another, he was "not merely act[ing] as a conduit for the opinions of others." *Greineder,* 458 Mass. at 236. See *Avila,* 454 Mass. at 760, 763. In addition, defense counsel engaged in a detailed cross-examination of Cunningham, eventually placing significant weight on Cunningham's expert testimony in his closing argument.[7] See *Commonwealth* v. *Banville,* 457 Mass. 530, 541 (2010); *Greineder,* 458 Mass. at 236.

---

[7]The defense cross-examined Cunningham and elicited nearly eleven transcript pages of testimony. In his closing argument, defense counsel stated, "We know that embedded into the windshield was hair and blood taken, and

Taking into consideration precedent and the defendant's opportunity to cross-examine the witness, we conclude that the admission of Cunningham's expert opinion testimony did not violate the defendant's right to confrontation.

2. *DNA charts.* During Cunningham's direct examination, the Commonwealth displayed for the jury and marked for identification several charts detailing specific DNA test results (generated from an analysis performed by nontestifying analyst Elizabeth Lewandowski that was based on the samples taken from both the motor vehicle and the defendant[8]). In his testimony, Cunningham referenced the charts (which were never admitted into evidence[9]) and specific numerical figures on the charts assigned by the nontestifying analyst. The Commonwealth concedes correctly that these details were entered in evidence in error and that the admission constitutes a violation of the defendant's State and Federal constitutional rights to confront and cross-examine witnesses against him. See *Barbosa,* 457 Mass. at 785 ("Only the defendant can open the door on cross-examination to testimony regarding the [facts or data forming] the basis for the expert's opinion . . .").

Because the defendant did not object to the admission of the data on the charts as hearsay at trial, we review the matter under the standard of a substantial risk of a miscarriage of justice. See *Nardi,* 452 Mass. at 394; *Greineder,* 458 Mass. at 236.[10] In examining whether an unpreserved error created a substantial risk of a miscarriage of justice, we consider the

that blood or the DNA from that blood turned out to match [the defendant], no surprise there." Addressing the defendant's testimony that an acquaintance named Don had been driving him home in the defendant's truck at the time of the accident, defense counsel also stated, "Now, Mr. Cunningham indicates that he found [the defendant's] or a sample that matched [the defendant's] DNA on the airbag and he also found another person's DNA on the airbag. Now, there was more than one sample of DNA in that car, we don't know when it was there, but I suggest to you it's there and I suggest that it's Don's DNA."

[8]The parties stipulated that the Framingham police department obtained a swab of the inside of the defendant's cheek to be used to determine his DNA profile.

[9]The charts were copied from Lewandowski's final report, which was also not put in evidence.

[10]The defendant argues that the appropriate standard of review, in light of *Commonwealth* v. *Vasquez,* 456 Mass. 350, 352 (2010), is harmlessness beyond

totality of evidence admitted at trial. *Barbosa*, 457 Mass. at 792. The erroneous admission of the evidence did not result in such a risk. The DNA charts and numerical data had little probative value independent of the correctly admitted expert opinion testimony concerning the statistical likelihood of the apparent match. See *Barbosa*, 457 Mass. at 789 ("Evidence of a match based on currently used testing processes is meaningless without evidence indicating the significance of the match"), quoting from *Commonwealth* v. *Lanigan*, 419 Mass. 15, 20 (1994). See also *Barbosa*, 457 Mass. at 792; *McCowen*, 458 Mass. at 484. In addition, the balance of the admissible evidence overwhelmingly proves the defendant's operation of the motor vehicle, including Cunningham's properly admitted opinion testimony, the testimony of multiple officers and several eyewitnesses to the accident, and the defendant's own statements.

It is relevant to note that the defendant relied on the details of the erroneously admitted DNA test data in bolstering the defense that it was possible that another individual operated the car at the time of the crash, based on the multiple DNA profiles recovered from the driver's side airbag.[11] See *Greineder*, 458 Mass. at 238-239. See also *Nardi*, 452 Mass. at 395-396 (admission of nontestifying medical examiner's findings during opinion testimony of pathologist was unpreserved error, but evidence was "equally, if not more, important to the defense" and did not create substantial likelihood of miscarriage of justice). As such, the erroneous admission of the data does not constitute a substantial risk of a miscarriage of justice.

B. *Motions to suppress.* The defendant argues that the motion judges erred in denying his two pretrial motions to suppress evidence. "When reviewing the denial of a motion to suppress, we accept the judge's findings of fact and will not disturb them absent clear error." *Commonwealth* v. *Watson*, 455 Mass. 246, 250 (2009). We make an "independent determination of the correctness of the judge's application of constitutional principles

---

a reasonable doubt. We disagree. An objection to the hearsay at the time of the trial would not have been futile. *Barbosa*, 457 Mass. at 792 & n.16.

[11]In closing argument, defense counsel argued, "May I suggest to you what's important in this case is that we know that this [nonmatching] DNA is found on a deployed airbag . . . ."

to the facts as found." *Commonwealth* v. *Gomes*, 453 Mass. 506, 509 (2009), quoting from *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996).

1. *Statements to police.* In his first motion to suppress, the defendant argued that his statements to police officers at the scene of the crash and at the hospital should have been excluded from evidence because they were given while in custody and without the benefit of a Miranda rights warning. An interrogation is custodial, and therefore requires a Miranda warning, when an individual is "deprived of his freedom of action in any significant way." *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966). In determining whether an individual is in custody, courts must assess how a reasonable person in the defendant's position would have understood the situation, taking into consideration whether the interrogation took place in a "police-dominated atmosphere." *Commonwealth* v. *LaFleur*, 58 Mass. App. Ct. 546, 549 (2003), quoting from *Miranda*, 384 U.S. at 445. See generally Smith, Criminal Practice & Procedure § 6.18 (3d ed. 2007 & Supp. 2011).

The police interrogation of the defendant, both at the scene of the accident and in the hospital, was in accordance with a general fact-finding process. See *Miranda*, 384 U.S. at 477. While at the hospital, the defendant was in an unsecured area, surrounded by the general public and various medical professionals.[12] A reasonable person would have understood that he was being held at the hospital by medical personnel for medical purposes, in light of the potential severity of his injuries following the crash. See *LaFleur*, 58 Mass. App. Ct. at 550-551. Accordingly, the motion judge's finding that any questioning was noncustodial was well supported, and the motion to suppress was properly denied.

In addition, the defendant's remarks and actions on the night of the crash indicate that his statements were voluntary, despite any possible disorientation, injuries, or intoxication. See *Commonwealth* v. *Koney*, 421 Mass. 295, 305 (1995) (defendant's statements to the police after motor vehicle accident were

---

[12]The defendant could have requested that the police officer leave his hospital cubicle. The officer did leave the room multiple times while the defendant received treatment, further indicating that the cubicle was not a police-dominated atmosphere.

voluntary despite intoxication and alleged shock, because "his mind was rational and his faculties were under control"), quoting from *Commonwealth* v. *Simmons,* 417 Mass. 60, 65 (1994). Generally, the defendant's statements following the accident amounted to denials of culpability.[13] Thus we conclude that the statements were properly admitted in evidence.

2. *Blood test.* The defendant also argues that the drawing of a blood sample by Dr. Bridget Lee, an emergency department physician at the hospital to which the defendant was taken following the accident, constituted an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. Consequently, he contends, the results of the blood alcohol test on the sample should have been excluded from evidence.

"It is well settled that the Fourth Amendment to the United States Constitution applies only to searches and seizures conducted by or at the direction of the State." *District Attorney for the Plymouth Dist.* v. *Coffey,* 386 Mass. 218, 220-221 (1982) (neither Fourth Amendment nor art. 14 implicated when the State not involved in private search, "even when the evidence is subsequently given to the police"). See generally Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 3-3 (2011-2012 ed.). As supportably found by the motion judge, the test here was conducted by Dr. Lee solely for the diagnosis and treatment of the patient, not for law enforcement purposes.[14] Accordingly, the motion judge properly denied the motion to suppress.

*Judgments affirmed.*

---

[13]The defendant stated that he was not drunk, had not been drinking or driving, and had acquired his injuries as a result of a fight. Additionally, there are no allegations that the defendant's alleged disorientation and injuries prevented him from making other decisions, such as the decision to accept treatment or be transported to the hospital.

[14]Dr. Lee testified at the motion hearing that she conducted the blood alcohol test to investigate whether head injury was playing a role in the defendant's observed clinical inebriation at the hospital. Furthermore, the defendant does not cite any facts that suggest that the government influenced Dr. Lee's medical decisions whatsoever.