On May 10, 2010, a grand jury indicted the defendant, Paulino Miranda, on charges of murder in the first degree, two firearms charges, armed robbery, and assault by means of a dangerous weapon. On August 31, 2015, the defendant's jury trial commenced. On September 9, 2015, the trial judge allowed the defendant's motion for required findings of not guilty as to the armed robbery and assault by means of a dangerous weapon charges, and denied the motion as to the other charges. Two days later, the jury found the defendant guilty of murder in the second degree and the two firearms charges. The defendant now appeals those convictions, alleging a number of errors, and claims of ineffective assistance of counsel. We affirm.
Background. At approximately 10:00 P.M. on December 12, 2009, Davine Berry ran into a convenience store in Brockton with blood on his shirt. He frantically explained that his friend had been shot and asked someone to telephone 911. State police Trooper Robert Bohn followed Berry to the store after observing him driving his vehicle erratically. When confronted by the trooper, Berry directed him to Berry's vehicle. In the vehicle's passenger seat lay the body of the victim, Ralph Hyppolite, shot once in the head at close range, apparently killing him instantly. Brockton police Detective McDermott, responding at the convenience store a short time later, observed a green Ford Explorer pull into the parking lot. The driver exited and walked towards the crime scene before officers turned him away.
Brockton police officer Scott Landry arrived at the convenience store and spoke with Berry. Based on their conversation, Officer Landry drove to the Ash Street area near a playground. He searched the area with a flashlight, discovering a single cartridge casing which he photographed on the ground near the playground. Officer Landry left the cartridge in place and waited there for another technician or officer to retrieve it. Detective McDermott, also investigating the Ash Street area, noticed the same green Ford Explorer he had seen at the convenience store pull into an adjacent apartment complex, turn around, and drive away.
Berry showed Trooper Bohn a picture of a license plate from his cellular telephone. That license plate was registered to a vehicle whose owner resided at 19 Sofia Avenue in Brockton. Trooper Landry testified that a general broadcast came over the radio for a gray Honda Accord with a license plate matching the one in Berry's photograph registered to 19 Sofia Avenue. Officers directed to that area found the vehicle parked outside 19 Sofia Avenue. Detective Mercurio parked outside the house in an unmarked cruiser, and then observed the defendant, another man, and a woman, Ana Goncalves, exit the house and drive away in a different vehicle -- an older-style Lincoln. Police stopped that vehicle and placed the defendant in handcuffs before taking all three occupants to the police station.
Detective McDermott later returned to the Sofia Avenue area in order to locate the green Ford Explorer, which he found parked at a nearby house on Fitzpatrick Avenue. He then walked around that property's perimeter, including a wooded area lined by a fence. Walking along the fence, he eventually discovered, up against the fence, a firearm covered with leaves.
Trooper Michael Arnold responded to Ash Street, where he recovered the cartridge casing that Officer Landry had earlier discovered. He then proceeded to the house on Fitzpatrick Avenue to recover the firearm, a nine-millimeter Ruger pistol. Underneath the Ruger Trooper Arnold discovered a second firearm, a Sig Sauer pistol. After Trooper Arnold performed ballistic testing on both pistols, he concluded that the Sig Sauer fired the cartridge casing he found on Ash Street.
Discussion. 1. Sufficiency of the evidence. The defendant contends that the trial judge erred in denying his motion for a required finding of not guilty as to the murder charge. Specifically, the defendant argues that the Commonwealth introduced insufficient evidence to prove that he was the shooter, where the deoxyribonucleic acid (DNA) found on the gun belonged to the defendant and another unknown person, and where the evidence suggested that a number of people could have shot the victim.
A motion for a required finding of not guilty "should be denied if all the circumstances including inferences [that are not too remote according to the usual course of events] are of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 676 (1979) (quotations omitted). "In evaluating the sufficiency of the Commonwealth's evidence, we consider the evidence introduced up to the time that the Commonwealth rested and the defense filed its first motion for a required finding of not guilty." Commonwealth v. Rarick, 87 Mass. App. Ct. 349, 351 (2015), quoting from Cramer v. Commonwealth, 419 Mass. 106, 112 (1994). We look to determine whether that evidence, viewed in a light most favorable to the Commonwealth, was sufficient to permit the jury to find all elements of the crime charged. Latimore, supra at 676-677. Here, we conclude that the Commonwealth presented sufficient evidence to permit the jury to find beyond a reasonable doubt that the defendant shot the victim.
Alanna Frederick, a forensic scientist at the Massachusetts State police crime laboratory, testified regarding the DNA testing performed on the Sig Sauer pistol and the results. She explained that the swab of the firearm contained a mixture of the defendant's DNA and DNA from another individual, with the defendant matching the major DNA profile.[2] In addition, Trooper Arnold testified that after examining the firearms, their characteristics, and their firing pin impressions, he reached the opinion that the Sig Sauer firearm recovered on Ash Street fired the cartridge casing. Trooper Arnold's opinion, coupled with Frederick's testimony that the defendant matched the major DNA profile found on the firearm used to shoot and kill the victim, was sufficient for the jury to conclude that the defendant shot the victim with that firearm.
In addition to the firearm testimony, a witness placed the defendant at the scene of the shooting. Ana Goncalves testified that she drove the defendant from the house on Sofia Avenue to a playground near Ash Street. Just before the defendant exited her car, Goncalves heard a clicking noise that sounded to her like the sliding of a firearm rack. She also heard the defendant say, as he stepped out of the car, "[W]e're going to get him." The defendant told Goncalves to wait there, which she did. As the defendant walked toward the park, Goncalves could see a dark object in his hand. Goncalves's testimony permitted the jury's inference that when she dropped the defendant off at the scene of the shooting -- moments before it occurred -- he possessed a firearm. Less than ten minutes later, the defendant telephoned Goncalves and asked her to go back to the house on Sofia Avenue. When she did, she saw the defendant, who asked that she drive him and another man to New Bedford. Goncalves refused, but relented when the defendant demanded she do so. She described the defendant's demeanor at this time as "panic[ked]."
Finally, the jury heard testimony from Detective Carpenter that at the police station -- just before officers tested the defendant for gunshot residue -- he saw the defendant licking the four fingers of his right hand. This behavior suggested the defendant's consciousness of guilt, as someone who wanted to hide evidence that recently he had held a firearm as it discharged. See Commonwealth v. Oeun Lam, 420 Mass. 615, 617-618 (1995). Therefore, we conclude that the Commonwealth presented sufficient evidence to permit the jury to consider the murder charge. The judge properly denied the defendant's motion for a required finding of not guilty.
2. Expert testimony. The defendant next claims that the ballistician's testimony exceeded the permissible scope of so-called "toolmark" evidence.[3] As there was no objection to the ballistician's testimony at trial, we review the alleged error for a substantial risk of a miscarriage of justice. Commonwealth v. Amirault, 424 Mass. 618, 653 (1997).
Commonwealth v. Pytou Heang, 458 Mass. 827 (2011), provides guidelines for the admissibility of forensic ballistics testimony. First, the expert must document the findings or observations that support his or her ultimate conclusion, and this supporting information must be provided to the defendant during discovery. Id. at 847. Second, prior to offering an opinion at trial, a ballistics expert should explain the theories and methodologies underlying the ballistics field. Ibid. Finally, a forensic ballistics expert may present an opinion of the toolmarks found on projectiles and cartridge casings "to a reasonable degree of ballistic certainty." Id. at 848.[4]
Here, Trooper Arnold's testimony followed the guidelines set out in Pytou Heang. Trooper Arnold detailed his findings and observations supporting his ultimate opinion, and the defendant does not assert that he was not provided that information in discovery. The trooper explained at length the theories and methodologies behind the ballistics field, noting that the matching process is "opinion based." He detailed the process of gathering the ballistic evidence in this case, the characteristics of the two firearms and their ammunition, and the toolmark evidence both generally and with regard to the evidence in this case. Only after explaining this to the jury did he state his opinion that the Sig Sauer pistol discharged the cartridge casing recovered on Ash Street.
It was likewise not error for the prosecutor to use the phrase "to a reasonable degree of professional certainty," instead of "ballistic certainty." While not in the form preferred by Pytou Heang, the use of the word "professional" did not "imply the presence of a firm statistical basis where none has been demonstrated." Pytou Heang, supra at 849 (ballistics expert should avoid using language such as "absolute certainty"). As noted above, Trooper Arnold prefaced his opinion by testifying that forensic ballistics is inherently subjective and opinion based. As such, use of the term "professional certainty" did not serve to connote a higher degree of certainty than "ballistic certainty." The same can be said of the defendant's claims that the trooper's use of the word "match" was improper. Trooper Arnold gave his testimony regarding a "match" between the recovered cartridge casing and the Sig Sauer pistol as his opinion, which he testified was subjective based on his training and experience. As with all witnesses, jurors were free to credit or to disregard his testimony as they saw fit. Accordingly, the defendant has failed to show that there was an error resulting in a substantial risk of a miscarriage of justice.[5]
Judgments affirmed.

A "major" DNA profile "comes across [in the testing] consistently at much higher levels than the rest of [the] mixture." Commonwealth v. McGrail, 80 Mass. App. Ct. 339, 341 n.4 (2011).

"Forensic ballistics or firearms identification is the analysis of bullet and cartridge case evidence and the use of that evidence to link specimens to each other and to particular weapons.... The theory underpinning forensic ballistics is that all firearms possess distinctive features that in turn impart distinctive markings or 'toolmarks' onto projectiles and cartridge casings when the weapon is fired. Using a microscope, firearms examiners compare toolmarks found on spent projectiles and cartridge casings to determine whether they were fired from a particular weapon, generally by comparing projectiles and cartridge casings found at the scene of a crime or in an autopsy with ones test-fired from a seized weapon." Commonwealth v. Pytou Heang, 458 Mass. 827, 836, 837-838 (2011) (quotations omitted).

It is not for us to second-guess the Supreme Judicial Court's Pytou Heang standards, as the defendant asks us to do, based on questions raised about ballistic evidence in a 2016 report of the President's Council of Advisors on Science and Technology, which we note postdates the trial in this case and no copy of which is in the record.

In concluding that the forensic ballistics expert's testimony was proper, we also necessarily conclude that the defendant's claim of ineffective assistance of counsel must fail. Defense counsel's failure to object to admissible testimony is plainly not a "manifestly unreasonable" tactical decision. Commonwealth v. Martin, 427 Mass. 816, 822 (1998). Furthermore, the defendant is not aided by the fact that he brings this claim as part of his direct appeal and unsupported by an affidavit from trial counsel, where such claims are in their "weakest form." Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002). The preferred vehicle for such claims is a motion for new trial. Commonwealth v. Zinser, 446 Mass. 807, 810-811 (2006).