COMMONWEALTH *vs.* JANUSZ M. BECLA.

No. 08-P-1011.

Essex. February 6, 2009. - April 23, 2009.

Present: RAPOZA, C.J., RUBIN, & FECTEAU, JJ.

*Due Process of Law,* Police custody.

A District Court judge erred in allowing the criminal defendant's motion to
   suppress statements that he made to a police officer at the scene of an
   automobile accident, brought on the ground that the police officer failed to
   advise the defendant of his Miranda rights, where the defendant was not in
   custody at the time he made those statements. [144-147]

COMPLAINT received and sworn to in the Salem Division of the
District Court Department on January 2, 2008.

A pretrial motion to suppress evidence was heard by *Robert
A. Cornetta,* J.

An application for leave to prosecute an interlocutory appeal
was allowed by *Robert J. Cordy,* J., in the Supreme Judicial
Court for the county of Suffolk, and the appeal was reported by
him to the Appeals Court.

*Kenneth E. Steinfield,* Assistant District Attorney, for the
Commonwealth.

*Stephen L. Jones* for the defendant.

RUBIN, J. This interlocutory appeal of an order by the District
Court judge suppressing statements made by the defendant
Janusz M. Becla to a police officer at the scene of an auto-
mobile accident requires us to address the question of what cir-
cumstances constitute "custodial" interrogation such that the
warnings required by *Miranda* v. *Arizona,* 384 U.S. 436 (1966),
must be given.

## I.

In the early morning hours of January 2, 2008, upon report of an automobile accident, Officer Steven Cecchini of the Beverly police department arrived at 83 Boyle Street in Beverly. He saw the defendant driving his car into the driveway of that address. The officer asked the defendant what happened, and the defendant said, "Isn't it obvious I hit a pole?" When asked if he was injured, the defendant said he was not. In response to a question asking where he was coming from, the defendant said he was coming from a friend's house.

Officer Cecchini testified that it was in fact obvious to him that the defendant had just driven into a telephone pole. The officer testified that, at the point at which he asked the defendant where he was coming from, he believed he had probable cause to arrest the defendant for operating under the influence of intoxicating liquor (OUI) because "he had caused a motor vehicle accident, his speech was slurred, he took a long time to answer questions, and his responses were delayed and deliberate." He testified that he did not advise the defendant of his belief or communicate it to the defendant.

The officer asked the defendant to perform field sobriety tests, and the defendant again responded in the negative when asked if he had any injuries or impairments that would prevent him from doing so. The officer asked the defendant to recite the alphabet. The defendant attempted to comply, but stated while doing so that he was not a "US National" and was not certain of the sequence of the letters. At the officer's request the defendant also attempted a one-legged stand. When Officer Cecchini then asked him to perform another test, the defendant said, "Don't you think you have enough?" The officer asked the defendant if he was refusing to do a third test, and the defendant said that he was. No Miranda warnings were given to the defendant prior to any of these events.

The defendant was then placed under arrest. A complaint issued in Salem District Court charging the defendant with OUI or with a percentage of alcohol by weight in his blood of .08 or greater. G. L. c. 90, § 24(1)(*a*)(1). The defendant subsequently filed a motion to suppress the statements made after the police

officer concluded that he had probable cause to arrest the defendant. After an evidentiary hearing, the judge concluded that the officer had made a determination prior to the field sobriety tests that the defendant was going to be arrested for OUI. The judge said, "[The officer] doesn't have to communicate it to the Defendant," and he ruled, "When an officer of the law makes a determination . . . that he intends to place a person under arrest," the Miranda warnings must be given. He therefore allowed the motion to suppress.[1] At the Commonwealth's request, the judge agreed to make written findings. On the same day that he ruled on the motion from the bench, he endorsed the motion, saying that the "arresting officer testified that he made his determination to place the defendant under arrest for OUI *prior to* conducting any field sobriety tests at the scene." He said, "The defendant was de facto in custody based upon the officer's determination as testified to." The Commonwealth then sought leave to prosecute this interlocutory appeal. A single justice of the Supreme Judicial Court allowed the Commonwealth's petition and transferred the case to the Appeals Court.

## II.

The premise of the decision of the United States Supreme Court in *Miranda,* 384 U.S. at 467, was that "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." While the Court consequently held that the admission of statements obtained through custodial interrogation in the absence of safeguards was not permissible, the Court described a procedure

[1]The judge sua sponte also ordered the suppression of the results of the field sobriety tests in light of his conclusion that the officer improperly failed to provide Miranda warnings. Field sobriety tests, including the one-legged stand test and the alphabet recitation test, have been held nontestimonial for purposes of the Fifth Amendment to the United States Constitution. See *Commonwealth* v. *Cameron,* 44 Mass. App. Ct. 912, 912-913 & n.1 (1998). At argument, the defendant claimed that in this particular case, his performance on the alphabet recitation test was testimonial. In light of our conclusion that the defendant was not in custody at the time the tests were administered to him, and that Miranda warnings therefore were not required in this case, we need not address this issue.

that would suffice to render information obtained through custodial interrogation admissible, articulating the now-famous warnings that bear the case's name, as well as the requirement of a knowing and intelligent waiver.[2]

*Miranda's* requirements thus are triggered only when interrogation takes place in a custodial setting. Over twenty-five years ago, the United States Supreme Court articulated the test for determining when interrogation was "in-custody" or "custodial" within the meaning of Federal constitutional law. Nonetheless, as the decision below indicates, courts have continued to have difficulty applying that test. Consequently, we think it worthwhile to explain again when an individual is in custody such that the warnings described in *Miranda* must be provided.

In *Berkemer* v. *McCarty*, 468 U.S. 420 (1984), the Supreme Court held that a suspect is "in custody" such that the "the safeguards prescribed by *Miranda* become applicable[,] as soon as [his] freedom of action is curtailed to a 'degree associated with formal arrest.' " *Id.* at 440, quoting *California* v. *Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam). In *Berkemer, supra* at 442, much as in this case, the arresting officer "apparently decided as soon as [the defendant] stepped out of his car that [the defendant] would be taken into custody and charged with a traffic offense." And, as in this case, the officer "never communicated his intention to [the defendant]." *Ibid.* Consistent with the fact that coercion is the principle that animates *Miranda*, the Court held that the test of whether a suspect's freedom of action is curtailed such

[2]Specifically, the Court held that statements made in response to custodial interrogation are admissible if the individual interrogated is "warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." *Miranda,* 384 U.S. at 479. The Court did not hold that warnings containing those specific words were constitutionally required, stating that statements made in response to in-custody interrogation would also be admissible if "other procedures which are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it" are utilized. *Id.* at 467. See *Dickerson* v. *United States,* 530 U.S. 428, 440 & n.6 (2000).

that he is entitled to the Miranda warnings is an objective one: "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Ibid.*

The Supreme Judicial Court has repeatedly echoed this: "Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' . . . '[T]he safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a "degree associated with formal arrest." ' . . . The test is an objective one: would a reasonable person in the circumstances of the defendant's interrogation have perceived the environment as coercive?" (Citations omitted.) *Commonwealth* v. *Kirwan*, 448 Mass. 304, 309 (2007). "The critical question in making the custody determination is 'whether, considering all the circumstances, a reasonable person in the defendant's position would have believed that he was in custody.' " *Commonwealth* v. *Sneed*, 440 Mass. 216, 220 (2003), quoting *Commonwealth* v. *Brum*, 438 Mass. 103, 111 (2002), in turn quoting *Commonwealth* v. *Damiano*, 422 Mass. 10, 13 (1996). See *Commonwealth* v. *Bryant*, 390 Mass. 729, 739 n.11 (1984) ("We . . . adhere to an objective standard").

The District Court judge's determination that the Miranda warnings were required because of the officer's subjective intent to place the defendant under arrest was therefore in error. It is undisputed that the officer did not communicate that intent to the defendant. The facts adduced at the hearing on the motion to suppress bring this case squarely within the holding of *Berkemer*, *supra* at 442, where the Supreme Court wrote "[f]rom aught that appears in the [record], a single police officer asked [the defendant] a modest number of questions and requested him to perform a simple balancing test at a location visible to passing motorists. Treatment of this sort cannot be fairly characterized as the functional equivalent of formal arrest." (Footnote omitted.) In this case, the defendant was asked to perform more than one field sobriety test, but that does not alter this conclusion. See *Pennsylvania* v. *Bruder*, 488 U.S. 9 (1988) (per curiam) (applying *Berkemer* where defendant was asked to perform more than one field

sobriety test). Because the defendant was not "in custody" within the meaning of *Miranda* and its progeny at the time he made the statements at issue, the order allowing the motion to suppress must be reversed.[3]

*So ordered.*

---

[3]The Supreme Judicial Court has described four factors relevant to the determination whether a reasonable person would have considered himself deprived of his freedom of action such that the requirements of *Miranda* are triggered: "(1) the place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that the person is a suspect; (3) the nature of the interrogation, i.e., whether the interview was aggressive or, instead, informal; and (4) whether, at the time the incriminating statement or statements were made, the suspect was free to end the interview by leaving the place of the interrogation or by asking the interrogator to leave, or, alternatively, whether the interview terminated with the defendant's arrest." *Commonwealth* v. *Sneed*, 440 Mass. at 220. "[R]arely is any single factor conclusive." *Ibid.*, quoting from *Commonwealth* v. *Bryant*, 390 Mass. at 737.

In this case, the judge found that the defendant was not in fact free to leave, and the interview terminated with the defendant's arrest. As the Supreme Judicial Court has explained, whether an interviewee is free to leave may provide evidence of whether he or she is in custody. See, e.g., *Commonwealth* v. *Clemente*, 452 Mass. 295, 328 (2008), cert. denied, 129 S. Ct. 1329 (2009). Nonetheless, as *Berkemer*, 486 U.S. at 442, itself makes clear, where the officer's subjective intent to arrest the defendant is not communicated in any way to him, and where no other factor points toward a conclusion that the defendant was objectively in custody, that intent alone will not suffice to trigger the need for Miranda warnings.