NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-987

COMMONWEALTH

vs.

WILLIE G. TASEJO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the District Court, the defendant, Willie G. Tasejo, was found guilty of operating a motor vehicle while under the influence of intoxicating liquor (OUI), in violation of G. L. c. 90, § 24 (1) (a) (1), and negligent operation of a motor vehicle, in violation of G. L. c. 90, § 24 (2) (a).[1] On appeal, the defendant argues that his motion to suppress statements and his motions for required findings of

---

[1] The complaint also included a charge of unlicensed operation of a motor vehicle, which was dismissed prior to trial, and a charge of leaving the scene of an accident involving property damage, as to which the trial judge entered a required finding of not guilty at the close of the Commonwealth's case.

not guilty were erroneously denied and that he received ineffective assistance of counsel.  We affirm.

Discussion.  1.  Motion to suppress.[2]  This appeal arises from an automobile accident that occurred in Waltham.  Waltham police officer Philip O'Dowd, the first to respond, arrived at the scene and saw that a Honda vehicle had rear-ended a pickup truck.  The Honda was smoking and leaking fluids, and the pickup truck was "destroyed."  A witness told O'Dowd that the operator of the Honda had walked away from the scene.  O'Dowd "ran the plate on the Honda" and obtained the name and phone number of its owner, the defendant.  He telephoned the defendant but was unable to communicate with him because O'Dowd spoke in English and the defendant was "apparently not able to understand him."  As both the defendant and Campos spoke Spanish, O'Dowd gave Campos his phone and asked him to relay O'Dowd's request that the defendant to return to the accident scene.  A short time later the defendant "came walking up the street."  He was unsteady on his feet and "very jolly . . . laughing, and joking, and hugging" the owner of the pickup truck.  O'Dowd asked the defendant to sit on a wall near the sidewalk to wait for a

_____

[2] "We set forth the facts found by the motion judge, supplemented with uncontroverted testimony from the suppression hearing that does 'not detract from the judge's ultimate findings.'"  Commonwealth v. Earl, 102 Mass. App. Ct. 664, 668–669 (2023), quoting Commonwealth v. Garner, 490 Mass. 90, 93-96 (2022).

2

Spanish speaking officer, Cesar Brache, who arrived between five and ten minutes later.

The defendant argues that statements he then made to Brache and O'Dowd were inadmissible because he was subject to custodial interrogation and was not advised of his Miranda rights. "When reviewing the denial of a motion to suppress, we defer to the judge's determination of 'the weight and credibility to be given oral testimony presented at the motion hearing,' and accept the judge's findings of fact absent clear error, but we perform an independent review of the judge's legal determinations." Commonwealth v. Tantillo, 103 Mass. App. Ct. 20, 22 (2023), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).

The defendant bears the burden of proving that he was in custody. See Commonwealth v. Kirwan, 448 Mass. 304, 309 (2007); Commonwealth v. Earl, 102 Mass. App. Ct. 664, 670 (2023). "[T]he safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest" (quotation and citation omitted). Kirwan, supra. "An interrogation is custodial if, based on an objective evaluation of the circumstances, a reasonable person in the defendant's shoes would have perceived the environment as coercive" (quotations and citations omitted). Tantillo, 103 Mass. App. Ct. at 23. We agree with the motion judge that the defendant was not subject to custodial interrogation, and "to

3

the extent [his] comings and goings were restricted," such restrictions were consistent with a roadside stop and did not require Miranda warnings.

Central to our conclusion is the fact that the defendant returned to the scene voluntarily. O'Dowd did not command him to do so. The evidence supports the motion judge's finding that the request that the defendant come to the accident scene where his damaged car was located was not an "official summons" or an "official action of police" -- it was a relayed "as a request through a civilian by telephone," notwithstanding his "businesslike" tone. A person is not considered to be in custody merely because he complies with a request from a police officer to come in for questioning. See Commonwealth v. Corriveau, 396 Mass. 319, 327 (1985); Commonwealth v. Slaney, 350 Mass. 400, 406 (1966). There was no evidence that any police officer acted in a threatening manner, used a threatening tone, displayed a weapon, or touched the defendant. See Corriveau, supra at 328. The judge specifically found that although some of the officers' questions were repeated, it was because of the language barrier and not "coercive in nature."

We also agree with the motion judge that the police officers' questioning here, in responding to an automobile accident, was analogous the questioning that occurs when police perform a traffic stop. "As a general rule, persons temporarily

4

detained during an ordinary traffic stop are not in custody for purposes of Miranda, even though they may not feel free to leave." Commonwealth v. Vellucci, 98 Mass. App. Ct. 274, 277 (2020). As when police officers stop a car on suspicion of drunk driving and detain the driver for brief questioning and to perform field sobriety tests, the questioning here did not amount to custodial interrogation requiring Miranda warnings. See Vanhouton v. Commonwealth, 424 Mass. 327, 331-332 (1997); Commonwealth v. Becla, 74 Mass. App. Ct. 142, 145-146 (2009). Cf. Berkemer v. McCarty, 468 U.S. 420, 437-439 (1984) ("atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself). To the extent O'Dowd required the defendant to sit on a wall to await the arrival of Brache, any detention was "minimal." Commonwealth v. Cawthron, 479 Mass. 612, 624 (2018).

To assess custody, courts consider the four factors set forth in Commonwealth v. Groome, 435 Mass. 201, 211-212 (2001). These factors are not exclusive, and we address them bearing in mind "the obligation of a court to consider all of the circumstances that shed light on the custody analysis." Commonwealth v. Medina, 485 Mass. 296, 301 (2020). Our review of the Groome factors confirms that the defendant was not in custody.

As to "the place of the interrogation," Groome, 435 Mass. at 211-212, the questioning took place on a public street in the middle of the day, weighing against a finding a custody. See Cawthron, 479 Mass. at 618; Commonwealth v. Tejada, 484 Mass. 1, 9 (2020).

With respect to whether the officers conveyed their belief that the defendant was a suspect, see Groome, 435 Mass. at 212, even if the officers believed that the defendant had operated under the influence and left the scene of the accident, they did not tell him so. The defendant argues that officers conveyed their suspicion to him because he overheard O'Dowd saying to Brache that he believed the defendant had been involved in the accident. The defendant asks us to infer both that he heard the officers' conversation from eight to twelve feet away and that he "may have understood" it even though he did not speak English. Nothing in the record, however, supports the claim that the defendant heard or understood the officers' conversation, or, more importantly, that they intended for him to hear it. See Becla, 74 Mass. App. Ct. at 147 n.3 ("where the officer's subjective intent to arrest the defendant is not communicated in any way to him . . . that intent alone will not suffice to trigger the need for Miranda warnings").

As to "the nature of the interrogation," Groome, 435 Mass. at 212, the officers' tone and manner were not "aggressive,"

6

"persistent," or "harsh." Commonwealth v. Coleman, 49 Mass. App. Ct. 150, 155 (2000). The defendant was not handcuffed or otherwise physically restrained. The presence of two, or possibly three, police officers and a parked police cruiser with flashing lights responding to a traffic accident did not create the type of police-dominated environment contemplated in Miranda. See Cawthron, 479 Mass. at 617, quoting Miranda v. Arizona, 384 U.S. 436, 457 (1966) ("Miranda warnings protect suspects from police-dominated environments that were 'created for no purpose other than to subjugate the individual to the will of his examiner'"). The record supports the judge's finding that officers asked "open-ended preliminary question[s]," such as whether the defendant was okay and what happened, "that [did] not convey suspicion of wrongdoing." See Kirwan, 448 Mass. at 311; Tantillo, 103 Mass. App. Ct. at 24. In fact, the defendant was described as "laughing" and acting "jolly" during the questioning, providing further evidence that he did not feel "either mentally or physically intimidated." Commonwealth v. Bryant, 390 Mass. 729, 739 (1984).[3]

---

[3] For the first time on appeal, citing cases such as United States v. Smith, 794 F.3d 681, 687-688 (7th Cir. 2015) (defendant's status "as a young black male confronted in a high-crime, high-poverty, minority-dominated urban area [of Milwaukee, Wisconsin] where police-citizen relations are strained" not irrelevant in determining whether encounter with police constituted seizure), and United States v. Washington, 490 F.3d 765, 768 (9th Cir. 2007) ("[r]ecent relations between

7

The fact that "the interview terminated with an arrest," Groome, 435 Mass. at 212, is the only factor weighing in favor of a finding of custody. However, "it does not follow that an arrest after an incriminating statement has been obtained, by itself, labels as custodial the interrogation that precedes the incriminating statement." Bryant, 390 Mass. at 742 n.15. See Cawthron, 479 Mass. at 624 (where environment was not coercive and other Groome factors weighed against custody, fact that defendant was not free to leave insufficient to establish custodial interrogation). Considering the totality of the circumstances, the defendant did not carry his burden of showing that he was in custody.

2. Corroboration of confession. The defendant admitted to O'Dowd and Brache that he crashed into the pickup truck after falling asleep behind the wheel. While his admission constituted evidence of operation, "a criminal defendant may not

_____

police and the African-American community in Portland [Oregon] are also pertinent to [seizure] analysis"), the defendant argues that the officers' conduct was objectively more coercive because the defendant was "a Hispanic individual who only speaks Spanish." The claim is waived, and even assuming that race or ethnicity informs the custody issue -- but see Commonwealth v. Evelyn, 485 Mass. 691, 702-703 (noting that experiences of persons of color and their attitudes about law enforcement differ and declining to decide whether race of defendant "properly informs the seizure inquiry") -- the record is inadequate for us to assess the nature of police relations with Waltham's Hispanic community. See Commonwealth v. Santos, 95 Mass. App. Ct. 791, 795-798 (2019) (declining to reach arguments concerning motion to suppress raised for first time on appeal).

8

be convicted solely on the basis of an uncorroborated confession." Commonwealth v. Leavey, 60 Mass. App. Ct. 249, 251 (2004). The corroboration required, however, is minimal. "All that is required is merely that there be some evidence, besides the confession, that the criminal act was committed by someone, that is that the crime was real and not imaginary" (quotations and citations omitted). Commonwealth v. Lagotic, 102 Mass. App. Ct. 405, 409 (2023).

The Commonwealth presented ample evidence to corroborate the defendant's admission that he operated the Honda before the accident. A Honda had crashed into a pickup truck, but the Honda's driver was not there. Shortly thereafter, O'Dowd telephoned the defendant and he "came walking back to the scene" exhibiting signs of drunkenness. He repeatedly hugged the driver of the pickup truck and was cooperative with the officers. See Commonwealth v. Congdon, 68 Mass. App. Ct. 782, 783-784 (2007) (evidence of defendant acting in manner "entirely consistent with her having been the operator" supplied proof beyond a reasonable doubt that she was). "Finally, there was an absence of evidence tending to suggest that someone other than the defendant was operating the vehicle" (quotation and citation omitted). Lagotic, 102 Mass. App. Ct. at 409.

3. Ineffective assistance of counsel. The defendant asserts, based solely on the trial record, that trial counsel

9

provided ineffective assistance.  We "strongly disfavor raising claims of ineffective assistance on direct appeal," Commonwealth v. Zinser, 446 Mass. 807, 811 (2006), although we may grant relief "when the factual basis of the claim appears indisputably on the trial record."  Id., quoting Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994).  To succeed on a claim of ineffective assistance, the defendant must show "serious incompetency of counsel (behavior falling measurably below that which might be expected from an ordinary fallible lawyer) and prejudice that, in this context, means a 'reasonable probability' that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Commonwealth v. Mahar, 442 Mass. 11, 15 (2004), quoting Strickland v. Washington, 466 U.S. 668, 694 (1984).

The defendant claims that trial counsel was incompetent in two ways.  First, counsel failed to move for a mistrial after Brache improperly testified that, in his opinion, the defendant had operated a motor vehicle "in an impaired manner" from drinking alcohol, and the judge, sua sponte, struck the testimony and told the jury not to consider it.  Second, he faults counsel for failing to object to the judge's instruction in the final charge that the jury could consider "any opinion" they had heard, without excluding Brache's struck testimony.

Counsel's failure to ask for a mistrial after Brache's misstep did not amount to serious incompetency.  The trial judge struck Brache's improper opinion testimony and forcefully instructed the jury to disregard it.  "[W]e presume that the jury follow the judge's instructions, including instructions to disregard testimony" (quotation and citation omitted), Commonwealth v. Dufresne, 489 Mass. 195, 208 (2022), and the error was not so egregious as to rebut that presumption.  See Commonwealth v. Canty, 466 Mass. 535, 545 (2013) (police officer's improper testimony that defendant's ability to drive was diminished not prejudicial).  "A request for a mistrial probably would have been futile, and counsel reasonably could decide to be content with the judge's forceful instruction."  Commonwealth v. Morales, 440 Mass. 536, 550 (2003).

For similar reasons, the record does not indisputably establish that counsel's failure to object to the final jury instruction on opinion testimony was "manifestly unreasonable" or prejudicial.  Counsel may have reasonably determined that any curative instruction would have detrimentally drawn the jury's attention to Brache's improper opinion testimony, even if the instruction was merely to remind the jurors not to consider testimony that the judge had struck.  In any event, we discern no reasonable probability the absence of such an instruction made any difference.  The instruction emphasized that even

11

though the jury could "consider" any opinion, it was up to them whether to accept or reject it. Moreover, "in view of the whole case, the prejudice flowing from this opinion would be relatively modest given what must have been obvious to the jury, i.e., that the arresting [officer] believed the defendant's ability to operate [his] car was impaired by alcohol consumption." Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 389-390 (2017).

Judgments affirmed.

By the Court (Massing, Walsh & Brennan, JJ.[4]),

Clerk

Entered: March 24, 2025.

---

[4] The panelists are listed in order of seniority.