NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-661

COMMONWEALTH

vs.

ACELIO P. VENTURA DOS SANTOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a bench trial in the District Court, a judge found the defendant guilty of operating a motor vehicle while under the influence of liquor (OUI), G. L. c. 90, § 24 (1) (a) (1), and negligent operation of a motor vehicle, G. L. c. 90, § 24 (2) (a).  On appeal, the defendant contends that (1) the motion judge erred by denying a motion to suppress the defendant's pre Miranda statements at the crash scene and (2) the trial judge erred by rejecting motions for required findings on both charges.  We affirm.

Background.  "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the]

ultimate findings and conclusions of law" (quotation and citation omitted).  Commonwealth v. Ramos, 470 Mass. 740, 742 (2015).  We summarize the evidence presented at the hearing on the motion to suppress.

At approximately 3:20 A.M. on February 7, 2021, an officer of the Abington police department responded to Hancock Street in Abington to investigate a report that a car had crashed into a house.  While approaching the scene, the officer saw debris in the roadway, damage to a fence, and a car on the lawn resting against a house.  He also saw tire tracks running from the roadway to the sidewalk near the crash scene.

The officer checked on the defendant's well-being and asked if he was driving and if he was the only person in the car.  The defendant responded that he was "okay" and stated that he was coming from a party.  The officer smelled a strong odor of alcohol and saw that the defendant was wavering and appearing unsteady on his feet.  The officer described the defendant's speech as "slurring" and the defendant's eyes as red and bloodshot.  The officer asked the defendant to perform field sobriety tests, which the defendant refused.  The officer formed the opinion that the defendant was intoxicated, arrested him, and advised him of his Miranda rights.

Discussion.  1.  Motion to suppress.  The defendant contends that, even though the police officer did not convey to

2

the defendant that he was not free to leave, he was nevertheless in custody during the police officer's preliminary inquiry because the "freakish" nature of the crash would have caused a reasonable person in the defendant's position to assume that the police officer had probable cause to arrest him.  Because the defendant did not raise this argument at the hearing on the motion to suppress, it is waived.  Commonwealth v. Dew, 478 Mass. 304, 309 (2017), quoting Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004) ("a motion to suppress 'shall state the grounds on which it is based and shall include in separately numbered paragraphs all reasons, defenses, or objections then available, which shall be set forth with particularity'").  Therefore, we review to examine whether the alleged error created a substantial risk of a miscarriage of justice.  Id. at 309-310.

"Miranda warnings are only necessary where one is subject to custodial interrogation" (quotation and citation omitted).  Commonwealth v. Morse, 427 Mass. 117, 122 (1998).  "Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of . . . freedom of action in any significant way.'"  Id. at 122-123, quoting Commonwealth v. Jung, 420 Mass. 675, 688 (1995).  "To determine whether an interrogation was custodial, we ask whether a reasonable person in the defendant's shoes

3

would have perceived the environment as coercive." Commonwealth v. Wardsworth, 482 Mass. 454, 481 (2019).

> "In making this determination, we consider four factors: '(1) the place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that [the] person is a suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the person being interviewed; and (4) whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest.'"

Id., quoting Commonwealth v. Groome, 435 Mass. 201, 211-212 (2001). "The so-called 'Groome factors' . . . are not exclusive, and the judge must consider the totality of the circumstances." Commonwealth v. Tantillo, 103 Mass. App. Ct. 20, 23 (2023).

The defendant asks us to revive an abrogated formulation of factor two in the limited circumstance wherein a reasonable person would know that they are suspected of a crime. The defendant's argument is based on a formulation in Commonwealth v. Bryant, 390 Mass. 729, 737 (1984), since abrogated by the Supreme Judicial Court. Compare id. (articulating factor two as "whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect") with Morse, 427 Mass. at 123-124 ("the subjective beliefs held by law enforcement officers are irrelevant in the

4

determination whether a person being questioned is in custody for purposes of the receipt of Miranda warnings, except to the extent that those beliefs influence the objective conditions surrounding an interrogation").  We decline the defendant's request to revive the formulation of factor two rejected in Morse, supra.  Applying the four Groome factors to the circumstances here, we conclude that the defendant was not subjected to custodial interrogation.

a.  Place of interrogation.  The questioning of the defendant took place in a yard abutting a public road, and the defendant was neither handcuffed nor physically restrained.  See Commonwealth v. Cawthron, 479 Mass. 612, 618 (2018) (environment not coercive where police questioned defendants in public parking lot and defendants were not physically restrained).  The motion judge concluded, and we agree, that the place of interrogation was not coercive.

b.  Whether the officer conveyed to the defendant that he was a suspect.  The officer's initial questions were intended to check on the defendant's well-being.  None of his questions, including his inquiry into whether the defendant had consumed intoxicating liquor that night, progressed to the pointed questioning typical of a custodial interrogation.  See Cawthron, 479 Mass. at 619-620 (although detective suspected that defendant had purchased drugs, his question "What did you just

5

buy?" did not convey suggestion of suspicion and would not cause reasonable person to feel their freedom to leave was curtailed); Commonwealth v. Downs, 31 Mass. App. Ct. 467, 471 (1991) (driver not in custody where officer suspected him of being impaired and asked where he had come from and how many drinks he had consumed). Here, the officer's questions focused on finding out what happened and did not convey to the defendant that he was suspected of negligent or impaired driving. Contrast Commonwealth v. Rodrigues, 104 Mass. App. Ct. 410, 414-415 & n.8 (2024) (officer conveyed suspicion by asking defendant pointed questions such as, "[W]hy are you running up towards this gentleman and saying that you're going to kick in his door?"). Because "[t]he record is devoid of any facts that take this case outside a routine . . . investigation for suspected drunk driving," the second factor weighs in favor of a noncustodial interrogation. Commonwealth v. Cameron, 44 Mass. App. Ct. 912, 914 (1998).

c. The nature of the interrogation. "Brief preliminary questions asked in an effort to confirm or dispel suspicion of criminal activity," like those asked by the officer at the crash scene here, "typically do not require Miranda warnings." Tantillo, 103 Mass. App. Ct. at 24. Nothing in the record supports that the questioning was aggressive or confrontational

6

in tone, and the officer's questions focused on ascertaining the defendant's well-being.

d. Whether the defendant was free to leave at the time the incriminating statement was made. The "pertinent question is whether an officer has, through words or conduct, objectively communicated that the officer would use his or her police power to coerce that person to stay." Commonwealth v. Matta, 483 Mass. 357, 362 (2019). Even though the interaction here ended in the defendant's arrest, the officer did not communicate his intent to coerce the defendant to remain at the scene or that he planned to arrest or charge the defendant. See Commonwealth v. Becla, 74 Mass. App. Ct. 142, 146 (2009), quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984) (police officer's "unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood [the] situation"). Contrast Commonwealth v. Coleman, 49 Mass. App. Ct. 150, 152 (2000) (defendant told if he persisted in denying crime he would be arrested, handcuffed, and removed, but if he confessed, he would be summoned to court).

Because the totality of the circumstances weighs in favor of a noncustodial interrogation during the officer's questioning

7

of the defendant, we discern no error in denying the defendant's motion to suppress.

2. Sufficiency of the evidence. The defendant contends that the trial judge erred in denying his motions for required findings of not guilty of both charges because the Commonwealth's evidence was insufficient to sustain a conviction of either charge.

"In determining the validity of a claim challenging the sufficiency of the Commonwealth's evidence at trial, we review the evidence in the light most favorable to the Commonwealth to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Powell, 459 Mass. 572, 578-579 (2011), cert. denied, 565 U.S. 1262 (2012), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

a. Operating under the influence. "[T]o establish the defendant's guilt of OUI . . . the Commonwealth was required to prove that the defendant (1) operated a motor vehicle, (2) on a public way, (3) while under the influence of alcohol." Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 392 (2017). Here, the defendant challenges only the third element, asserting that the video footage of the defendant's booking process at the police station created reasonable doubt that the defendant was under the influence of alcohol.

Before analyzing the effect of the booking video footage, we first determine, viewing the evidence in the light most favorable to the Commonwealth, whether the Commonwealth presented sufficient evidence at trial to support a finding that the defendant was under the influence. The responding officer saw the defendant unsteady on his feet at the scene of a crash with red, glassy, bloodshot eyes. The defendant smelled of alcohol and slurred his speech. The homeowner corroborated the responding officer's observations, testifying that the defendant "reeked of liquor" and slurred his words at the scene. Furthermore, the officer found an empty beer bottle in the defendant's car. The totality of the Commonwealth's evidence permits a rational inference that the defendant was under the influence of alcohol when he crashed. See Commonwealth v. Flanagan, 76 Mass. App. Ct. 456, 464 (2010) (circumstantial evidence sufficient to convict defendant of OUI).

Because the basis of the defendant's challenge lies in the booking video footage introduced by the defendant after the Commonwealth rested its case, we determine whether that evidence caused the Commonwealth's proof to deteriorate. See Commonwealth v. O'Laughlin, 446 Mass. 188, 198 (2006). Deterioration occurs when the defendant's evidence shows that the Commonwealth's evidence was "incredible or conclusively incorrect" (citation omitted). Commonwealth v. Nhut Huynh, 452

9

Mass. 481, 485 (2008). But the booking video footage, recorded sometime after the defendant interacted with the responding officer and the homeowner at the scene, did not contradict the Commonwealth's case. Given the delay between the incident and the video recording, it carried less probative weight than the contemporaneous witness testimony. See Commonwealth v. Marley, 396 Mass. 433, 438 (1985) ("delays between an accident or time of arrest and the testing for blood alcohol content generally [go] to the weight of the evidence"). Therefore, the defendant failed to demonstrate that the Commonwealth's case was "incredible or conclusively incorrect" (citation omitted). Nhut Huynh, supra. The defendant urges that we weigh the evidence differently from the trier of fact, which we do not do. Commonwealth v. Perez, 27 Mass. App. Ct. 550, 552 (1989). We discern no error in the judge's finding as it pertains to the OUI charge.

b. Negligent operation of a motor vehicle. "To prove the defendant guilty of negligent operation of a motor vehicle, the Commonwealth must show 'that the defendant (1) operated a motor vehicle, (2) upon a public way, and (3) (recklessly or) negligently so that the lives or safety of the public might be endangered.'" Tantillo, 103 Mass. App. Ct. at 26, quoting Commonwealth v. Daley, 66 Mass. App. Ct. 254, 255 (2006). Because the defendant challenges only the third element, we

10

analyze only the sufficiency of the evidence as it pertains to negligence.

"Negligence . . . is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which . . . the person of ordinary caution and prudence ought to exercise under the particular circumstances." Commonwealth v. Howe, 103 Mass. App. Ct. 354, 358 (2023), quoting McGovern v. State Ethics Comm'n, 96 Mass. App. Ct. 221, 232 n.25 (2019). "Proof of [the defendant's negligent] operation of a motor vehicle may 'rest entirely on circumstantial evidence.'" Commonwealth v. Petersen, 67 Mass. App. Ct. 49, 52 (2006), quoting Commonwealth v. Cromwell, 56 Mass. App. Ct. 436, 438 (2002).

Here, the Commonwealth introduced extensive circumstantial evidence that the defendant drove in such a way that he ended up crashed into a house on Hancock Street. The police officer testified that, upon arrival at the scene, he saw tire tracks across the double yellow lines of the snow-covered street leading to the adjacent sidewalk and front lawn. The officer also saw damage to a fence adjacent to the roadway and, next to that fence, an object that appeared to be the bumper for the defendant's car. At the residence, the officer saw the defendant's car pushed "six inches to a foot" into a house twenty yards away from the road. Around the point of impact,

the officer smelled gas and saw that the foundation of the residence was "cracked" and "all pushed in."  The homeowner testified that the impact of the crash shook the house and woke him up, describing the sound like a "tornado or a train."  He saw the "right side" wall of his home "knocked in," and the foundation and ceiling cracked, where the car had crashed into the house.  The car "busted the water pipes," spewing water everywhere.  Such "extensive damage . . . demonstrates that the collision occurred with considerable force."  Howe, 103 Mass. App. Ct. at 358.  Combined with the officer's testimony that the tire tracks made by the defendant's vehicle crossed the double yellow line, the damage "permitted an inference that the defendant was not driving with the care he ought to have been exercising" in the snowy conditions.  Id. at 359.  We discern no error in the judge's finding as it pertains to negligent operation.  See Commonwealth v. Ferreira, 70 Mass. App. Ct. 32, 35 (2007) ("[negligent operation] statute only requires proof

that the defendant's conduct might have endangered the safety of the public, not that it in fact did").

Judgments affirmed.

By the Court (Massing,
  Hershfang & Tan, JJ.[1]),

Clerk

Entered:  June 12, 2025.

---

[1] The panelists are listed in order of seniority.